ATTORNEY FOR APPELLANTS
Matthew Jon McGovern
Evansville, Indiana

ATTORNEY FOR APPELLEES
David P. Allen
Salem, Indiana

In the

# Indiana Supreme Court

No. 88S01-0703-CV-121

IN THE MATTER OF THE GUARDIANSHIP
OF E.N., ADULT.

Appeal from the Washington Circuit Court, No. 88C01-9906-GU-22
The Honorable Frank Newkirk, Jr., Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 88A01-0508-CV-338

**December 12, 2007**

**Boehm, Justice.**

We hold that the guardianship estate planning statute does not authorize dispositions of the protected person's entire estate.

**Facts and Procedural History**

E.N. married Donna Nolan in 1955. Two children, Shirley and Marvin, were born of the marriage. During his marriage to Donna, E.N. apparently executed two wills, one in 1983 and another in 1992 that poured over into a revocable trust. Both wills and the trust named Donna, Shirley, Marvin, and their children as the beneficiaries.

In 1997, after over forty years of marriage, Donna filed for dissolution and the couple separated. After the separation, E.N. resided with his brothers, William and Arville. In December 1997, while living with his brothers, E.N. executed a will drafted by Harry Paynter, his attor-

ney in the dissolution proceedings, in which he left his entire estate to his brothers and specifically disinherited his children. The dissolution became final on February 4, 1999, and shortly thereafter E.N. executed a second will, also drafted by Paynter, restating his 1997 will. Concurrent with the execution of his wills, E.N. named William and Arville in his 1997 and 1999 powers of attorney and 1999 appointment of healthcare representative. The brothers were also named beneficiaries of E.N.'s life insurance policy, pay-on-death account, and annuities.

E.N. suffered from Alzheimer's disease. By early 1999, his mental condition had deteriorated, and his brothers had assumed his care and management of his affairs. The trial court found that during this time, the brothers actively concealed E.N.'s whereabouts and restricted his contacts with family, friends, and acquaintances. Ultimately, the brothers placed E.N. in the Northwood Retirement Home, asserting that E.N.'s family was trying to poison him and instructing the staff not to disclose his presence to others.

On June 22, 1999, Shirley, represented by David Allen, who represented Donna against E.N. in the dissolution, petitioned the Washington Circuit Court to impose a temporary guardianship. Shirley was appointed E.N.'s temporary guardian on that date. In August 1999, after a hearing, Shirley was appointed permanent guardian over the objection of E.N.'s brothers. In January 2000, Judge Newkirk of the Washington Superior Court was appointed special judge in the guardianship proceeding. Marvin was later appointed coguardian.

After the guardianship was established, E.N. was removed from the Northwood Retirement Home and returned to the family farm where he had requested to live. Two months after her appointment as guardian, Shirley resigned her position as a McDonald's cashier and personally undertook E.N.'s care, charging the guardianship six dollars per hour for paying bills, cleaning, cooking, and otherwise attending to E.N.'s needs. Shirley later unsuccessfully petitioned the guardianship court to increase her hourly rate from six to ten dollars. The trial court found that in August 1999, E.N. testified that "he was not aware of his brothers' names on various accounts and did not intend for them to be the beneficiaries of his estate." In November 1999, E.N. executed a will drafted by Attorney Allen naming Shirley and Marvin as the sole beneficiaries of his estate. In 2001, Shirley placed E.N. in a different nursing home. She continued to charge the guardianship for services, time spent visiting the nursing home, and mileage.

2

The record in the guardianship court includes a flurry of preliminary skirmishing from the spring of 2000 until July 2002, when Shirley petitioned the guardianship court to implement an estate plan on E.N.'s behalf under the statutory provision discussed below. The plan proposed that all of E.N.'s property be placed in the "E.N. Revocable Trust" with Marvin as trustee. The trust called for income and principal to be applied to E.N.'s support during his life, and upon his death any remaining property was to be allocated between two trusts for the benefit of Shirley and Marvin and their children. E.N.'s brothers objected to the proposed plan, and after a hearing on the petition, the guardianship court approved the coguardians' plan with an added provision that gave the brothers five percent of E.N.'s net estate at death less any amounts spent by the guardianship defending future litigation with the brothers.

In approving the amended plan by order dated October 14, 2003, the guardianship court made several findings of fact. The guardianship court found that E.N. was not competent to make any of the 1997 or 1999 wills and that E.N. lacked the capacity to look beyond the kindness of those providing for his physical and emotional needs. The guardianship court further found that E.N. was under his brothers' influence when he executed his December 1997 and February 1999 wills and that E.N. was under his children's influence when he executed his November 1999 will. The court then found that a "reasonable and prudent person would provide the bulk of his estate to his children upon their demonstration of love, concern, and care for him, while providing a reasonable allowance to his brothers who assisted him and are now in their retirement years as well." The guardianship court also noted that the already extensive litigation between E.N.'s brothers and children on a variety of fronts had "substantially depleted" E.N.'s estate. The brothers appealed the guardianship court's order approving the amended estate plan, but the Court of Appeals dismissed that appeal on the ground that there was no final appealable order.

E.N. died on May 7, 2004. On that date, Shirley and Marvin opened a second legal front by petitioning the Washington Circuit Court to probate his November 1999 will. The brothers objected to the probate of the November 1999 will, citing the guardianship court's finding that the will was invalid. In November 2004, while the brothers' objection to the November 1999 will was pending in the probate court, Shirley and Marvin petitioned in the probate court to pro-

bate E.N.'s 1983 will, "excepting only those provisions therein for the benefit of Donna Nolan."[1] This will would have left everything to Donna, Shirley, and Marvin and did not mention E.N's brothers. The brothers objected to the probate of the 1983 will. At some point not reflected in this record, Judge Davis of the Harrison Superior Court was appointed special judge in the probate proceedings. On January 20, 2005, all further probate proceedings were stayed pending the resolution of all guardianship matters, including this appeal.

After E.N.'s death, his brothers and children continued to litigate in the guardianship court over the coguardians' final report and accounting. In July 2005, the brothers filed the current appeal challenging the guardianship's approval of the estate plan. The guardianship court then terminated the guardianship "in all respects except as to those matters presently on appeal." The Court of Appeals affirmed the guardianship court's approval of the estate plan. In the Matter of the Guardianship of E.N., 853 N.E.2d 960, 969 (Ind. Ct. App. 2006). It held that the statute authorized the proposed trusts because they applied E.N.'s assets first to his lifetime support. Id. at 967. The Court of Appeals also found the statute contained no explicit ban on placing assets in trust or rewriting a protected person's will. Id. We granted transfer. 869 N.E.2d 453 (Ind. 2007) (table).

### I. Testamentary Dispositions by Guardians

This case turns on the interpretation of Indiana's guardianship estate planning statute, Indiana Code section 29-3-9-4. Statutory interpretation is a question of law reviewed de novo. Porter Dev., LLC v. First Nat'l Bank of Valparaiso, 866 N.E.2d 775, 778 (Ind. 2007) (citations omitted).

---

[1] Shirley and Marvin's Petition to Probate Prior Will of Decedent refers to wills executed March 7, 1993, and March 7, 1983. The petition alleges that the 1997 and 1999 wills are invalid because of the guardianship court's ruling as to competency, and that as a result the parties "are left" with the 1993 will. However, the petition seeks to probate only the 1983 will. It is unclear whether E.N. executed a will in 1993 or whether the petition contained a typographical error and intended to refer to the 1983 or 1992 will. In either case, the petition does not explain why the 1983 will should be probated despite the existence in the record of what appears to be a 1992 will executed by E.N. The record also does not contain a signed copy of the 1983 will. Rather, it contains an unsigned copy attached as an exhibit to the petition. The record does not reveal what, if any action was taken as to the 1993 will, if there was one, or why it did not revoke the 1983 will.

4

Indiana law allows for the appointment of a guardian to act in the best interests of a person who is unable to care for himself or for his property. See Ind. Code §§ 29-3-1 to -13 (2004). In general, the guardian has power to conduct the protected person's affairs. Id. § 29-3-8-2. Indiana Code section 29-3-9-4 specifically authorizes the guardian to take steps directed to estate planning for the protected person.[2] As part of these estate planning powers, a guardian may dispose of the protected person's "principal or income . . . in excess of that likely to be required for the protected person's future support." Excess principal or income may be disposed of (1) to minimize the protected person's income or estate tax liability and (2) "for any other purpose" when a disposition is in the best interests of the protected person or his or her property, spouse,

---

[2] This provision in full reads:

Sec. 4. (a) Upon petition of the guardian (other than a temporary guardian) or any other person as approved by the court, and after notice to such persons as the court may direct, the court may, after hearing and by order, authorize the guardian to apply or dispose of the principal or income of the estate of the protected person that the court determines to be in excess of that likely to be required for the protected person's future support or for the future support of the protected person's dependents during the lifetime of the protected person, in order to carry out the estate planning that the court determines to be appropriate for the purposes of minimizing current and prospective income, estate, or other taxes. The court may accordingly authorize the guardian to make gifts, outright or in trust, on behalf of the protected person to or for the benefit of the prospective legatees, devisees, or heirs, including any person serving as the protected person's guardian, or to other individuals or charities, to whom or in which it is shown that the protected person had an interest. In addition, the court may also authorize the guardian to:

> (1) apply or dispose of the excess principal or income for any other purpose the court decides is in the best interests of the protected person or the protected person's property, spouse, or family;
>
> (2) exercise or waive the right of the protected person to renounce or disclaim any interest in whole or in part devolving by testate or intestate succession or by inter vivos transfer, including the right of the protected person to surrender the right to revoke a revocable trust; or
>
> (3) exercise or release any power of appointment that is vested in the protected person.

(b) In a hearing upon a petition filed under subsection (a), the court shall determine whether the planned disposition, renunciation, disclaimer, release, or exercise is consistent with the apparent intention of the protected person, which determination shall be made on the basis of evidence as to the declarations, practices, or conduct of the protected person or, in the absence of that type of evidence, upon the court's determination as to what a reasonable and prudent person would do under the same or similar circumstances as are shown by the evidence presented by the court.

(c) The guardian may examine the will of the protected person.

or family.  In either case, the court must find that the disposition is "consistent with the apparent intention of the protected person" based on the protected person's declarations, practices, or conduct.  If there is no evidence of the protected person's intentions, the court may allow dispositions that a reasonable and prudent person would make under the circumstances.

The extent, if any, that the guardianship estate planning statute authorizes dispositions of the protected person's entire estate either during life or at death is an issue of first impression.[3]  For several reasons, we think the legislature did not authorize such transfers.

First, the statute explicitly allows for "gifts" but does not authorize "devises."  Similarly, although section 4(a) authorizes a variety of specific steps to avoid unnecessary estate taxes (including giving to charity, relinquishing powers of appointment, and disclaiming interests in various estates), it does not mention the writing, modification, or revocation of wills.  Shirley and Marvin cite Illinois's estate planning statute in support of a guardian's power to make testamentary dispositions.  The Illinois statute, however, specifically authorizes a guardian to modify the protected person's will or revocable trusts.  755 Ill. Comp. Stat. Ann. 5/11a-18(a-5)(11) (West 2007).  The absence of language similar to that found in the Illinois statute suggests that Indiana's statute does not include the broad power the children claim.

Second, the statute allows the guardian to "apply or dispose" of "excess" principal and income.  Even if the trust assets remain available to support the protected person, the creation of a revocable trust is a "disposition" or "application" of assets because it places the assets under control of others and frees the assets from supervision of the guardianship court.  The trust in this case disposed of all E.N.'s assets, including those needed for his "future" support.  It therefore is not within the transfer contemplated by this statute.

Third, had the legislature intended to authorize dispositions effective at death, it surely could have described that power in a simpler way by authorizing wills, trusts, and other estate planning tools.

---

[3] Shirley and Marvin contend that Boone County State Bank v. Andrews, 446 N.E.2d 618 (Ind. Ct. App. 1983), governs the outcome of this case.  Boone County State Bank involved an earlier version of the guardianship estate planning statute, and upheld inter vivos gifts of $6,000 from a ninety-eight year old person's estate valued at approximately $900,000.  These gifts clearly fell within the guardian's authority to dispose of excess assets.  Id. at 619.

Fourth, the principal focus of this statute is minimizing estate and inheritance taxes by reducing the protected person's assets through gifts and other estate planning mechanisms. The obvious application of such a provision is to allow inter vivos gifts of amounts below the annual gift tax exclusion to known beneficiaries. Gifts effective at the protected person's death can also reduce the taxable estate, but a disposition of an entire estate necessarily involves a transfer of some assets that generates no tax benefit because of the minimum levels required to incur any tax.

Fifth, if there is no evidence of the decedent's desires, the intestate succession laws already tell us what the legislature believes is a reasonable and prudent disposition of property at death.

Finally, Indiana Code section 29-1-5-8, which revokes all provisions in favor of a testator's spouse upon divorce, also provides that with the exception of revocation upon divorce, "no written will, nor any part thereof, can be revoked by any change in the circumstances or condition of the testator." To the extent E.N. had a valid will, the estate plan effectively revoked it. This legislation does not authorize overriding a will made while competent based on the protected person's perceived post-incapacity desires. It may be desirable to provide a means other than a pre-incapacity will or intestate succession to dispose of a protected person's entire estate at death. The current statutes, however, do not authorize the court to write a will for the protected person, nor do they authorize the practical equivalent of a will in the form of a trust that disposes of the person's assets beyond those determined to be in excess of the person's needs. The legislature is certainly free to authorize guardians to dispose of all property at the protected person's death, but as of now it has not done so.

## II.    Invalidation of Pre-Guardianship Wills

The trial court, perhaps in an effort to end these expensive hostilities, ruled on the validity of E.N.'s 1997 and 1999 wills at a time when E.N. was still living. The brothers contend that the validity of a will is a matter to be resolved in the probate court through will contest proceedings. The will contest statute allows any interested person to object to the probate of a will within three months of the order admitting the will to probate. Ind. Code § 29-1-7-17. The order admitting the will to probate requires a petition to probate a will, which must contain the date of

7

the testator's death.  Id. § 29-1-7-5.  Thus, the brothers reason that a will contest may only occur after the testator's death.  The children respond that Indiana's declaratory judgment statute authorized the trial court to determine the validity of E.N.'s wills.  This statute provides that "[a]ny person interested under a  . . . will . . . may have determined any question of construction or validity arising under the instrument."  Id. § 34-14-1-2.

Generally, Indiana courts have required that the party seeking a declaratory judgment have a "substantial present interest in the relief sought."  Hibler v. Conseco, Inc., 744 N.E.2d 1012, 1023 (Ind. Ct. App. 2001) (citing Town of Munster v. Hluska, 646 N.E.2d 1009, 1012 (Ind. Ct. App. 1995)).  Although there is no Indiana case on point, some other jurisdictions have recognized an exception to the present interest requirement

> where a present right depends upon a decision as to a future right, where there are special circumstances satisfying the court that it is desirable to make a declaration presently as to future rights, or where a present determination of a right contingent on a future event may serve a real practical need of the parties for guidance in their future conduct.

See generally Annotation, Questions Regarding Rights of Inheritance or Other Rights in Respect of Another's Estate After Death as Proper Subject of Declaratory Action Before Latter's Death, 139 A.L.R. 1239 (1942).  Whether or not Indiana law would recognize this exception, it would not apply here because the ruling of the trial court did not require a determination of E.N.'s competency in 1997 or 1999.  The trial court had before it a petition to approve the children's proposed estate plan.  Had the proposed estate plan disposed of only E.N.'s "excess" assets, it would have been within the realm of steps authorized by the statute.  This proposed estate plan disposed of all E.N.'s assets.  It was therefore not authorized by the guardianship estate planning statute, and must be disapproved, regardless of the validity of E.N.'s prior wills, which remains a matter for the probate court to consider under the will contest statutes.[4]

---

[4] We do not hold that the guardianship court could never address issues of a protected person's competency at the time a protected person made a will.  Had the trial court sought to implement an authorized plan involving, for example, inter vivos gifts of excess assets, competency to make the earlier wills might have become an issue in so far as it bore on the identification of the persons whom E.N., while competent, viewed as the objects of his bounty.

## Conclusion

The guardianship court's October 14, 2003, Order approving the guardian's modified estate plan is reversed. This case is remanded with instructions to close the guardianship by reason of E.N.'s death. The disposition of his estate remains a matter for the probate court to consider.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.