MIDWEST PSYCHOLOGICAL
CENTER, INC., Appellant–
Plaintiff,

v.

INDIANA DEPARTMENT OF ADMIN-
ISTRATION, Correctional Medical
Services, Inc. n/k/a Corizon, Inc.,
Indiana Minority Health Coalition,
Inc., Mark Everson, and Tony Kirk-
land, Appellees–Defendants.

No. 49A02–1103–MI–213.

Court of Appeals of Indiana.

Dec. 30, 2011.

Adam Lenkowsky, Roberts & Bishop, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees, Indiana Department of Administration, Mark Everson, and Tony Kirkland.

J. Murray Clark, April E. Sellers, Christina L. Clark, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellee, Correctional Medical Services, Inc. n/k/a Corizon, Inc.

Harold R. Bickham, Jeanine Kerridge, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellee, Indiana Minority Health Coalition, Inc.

## OPINION

CRONE, Judge.

### Case Summary

Midwest Psychological Center, Inc. ("Midwest"), is a for-profit business that provides mental health services. Indiana Minority Health Coalition, Inc. ("Minority Health"), is a non-profit organization that provides mental health services. Both have received certification from the Indiana Department of Administration ("IDOA") as a minority business enterprise ("MBE"). Corizon, Inc., has a contract with the IDOA to provide mental health services. Corizon has a subcontract with Minority Health to provide some of the mental health services under the contract with the IDOA. Midwest filed a grievance with the IDOA, alleging that Minority Health was not eligible to be certified a MBE and asking the IDOA to decertify Minority Health, but it did not.

Midwest filed a complaint against Corizon, Minority Health, the IDOA, Mark Everson, and Tony Kirkland (collectively referred to as "Appellees"),[1] seeking a declaratory judgment stating that Minority Health is not a MBE, that Kirkland has a conflict of interest by serving both on Minority Health's board of directors and as a commissioner overseeing the IDOA's decertification process, enjoining Minority Health from providing mental health services under its subcontract with Corizon, and enjoining the IDOA from contracting with Corizon for the provision of mental health services to the extent that Corizon subcontracts with Minority Health. Appellees moved for judgment on the pleadings, asserting that Midwest lacked standing to challenge Minority Health's MBE certification, the subcontract between Minority Health and Corizon, or the contract between the IDOA and Corizon. The trial court found that Midwest lacked standing and granted the motions for judgment on the pleadings.

Midwest appeals, arguing that the trial court erred in granting the motions because Midwest has standing as an aggrieved person under Indiana Code Section 5–22–19–2. We conclude that Midwest is not aggrieved and therefore does not have standing to challenge either the subcontract between Minority Health

---

1. The IDOA, Everson, and Kirkland requested and were granted leave to join in the briefs filed by Corizon and Minority Health.

and Corizon or the contract between the IDOA and Corizon. We further conclude that Midwest's complaint does not plead averments necessary to establish standing for judicial review of the IDOA's proceedings regarding Minority Health's decertification and allegations of Kirkland's conflict of interest. We therefore affirm the trial court's decision to grant Appellees' motions for judgment on the pleadings.

### Facts and Procedural History

A brief description of Indiana's Minority and Women's Business Enterprises ("M/WBE") program is helpful to understanding the allegations in Midwest's complaint. The M/WBE program is part of the State's policy to provide equal opportunity to minority and women's business enterprises in its award of state contracts and the procurement of goods and services. 25 Ind. Admin. Code 5–5–1. The Governor's Commission on Minority and Women's Business Enterprises ("M/WBE Commission") sets annual goals for the State's use of minority and women's business enterprises. Ind.Code § 4–13–16.5–2(f)(8). The M/WBE Commission works with the IDOA, which monitors, enforces, and promotes the M/WBE program. Within the IDOA, a deputy commissioner for M/WBE development certifies minority and women's business enterprises for state projects and sets rules to ensure that the M/WBE Commission's goals are met. Ind.Code §§ 4–13–16.5–3(b)(1) and –4(b). The IDOA's rules provide that the M/WBE Commission's goals for the use of MBEs and women's business enterprises ("WBEs") "may be met through the use of prime contractors, subcontractors, suppliers, joint ventures, or other arrangements that afford meaningful opportunities for MBE and WBE participation." 25 Ind. Admin. Code 5–7–3(b).

In addition to its role in the M/WBE program, the IDOA also oversees the award of state contracts to primary contractors and the procurement of goods and services under state contracts. The IDOA allows primary contractors to indicate in their bid proposals that they are either certified MBEs or are hiring certified MBEs as subcontractors. 25 Ind. Admin. Code 5–5 and 5–6.

On March 12, 2010, Midwest filed a complaint in Marion Superior Court for damages, declaratory judgment, and injunction against the IDOA, Mark Everson, Tony Kirkland, Corizon, and Minority Health. Appellant's App. at 17–20. Midwest's complaint contained the following allegations. Midwest is a *for-profit* corporation in the business of providing mental health services and is a certified MBE. Minority Health is a *non-profit* corporation engaged in providing mental health services and is also a certified MBE. Corizon is a corporation that provides healthcare services in prisons and jails. Corizon has a contract with the IDOA to provide healthcare services. By June 2007, Corizon subcontracted with Minority Health for the provision of mental health services to inmates in state correctional facilities.[2] Corizon's contract with the IDOA was acquired due to Corizon's subcontract with Minority Health.[3] Mark Everson is the current commissioner of the IDOA. At all

---

2. The complaint does not provide the date on which Corizon and Minority Health executed their contract, but all parties agree that it was in or before June 2007. Appellant's Br. at 8. The date is significant because the W/MBE statutes, Indiana Code Sections 4–13–16.5–1

to –9, were amended effective July 2007. Pub. Law 228–2007.

3. Presumably, this allegation is based on Midwest's belief that the state relied on Corizon's use of an MBE subcontractor to meet its annual MBE use goals.

relevant times, Tony Kirkland both chaired the M/WBE Commission and sat on Minority Health's board of directors. Kirkland's duties were to oversee the MBE program and the complaint process which allowed for MBEs to request decertification of other MBEs. On March 17, 2009, after filing several other administrative complaints, Midwest filed another complaint with the IDOA,[4] alleging that the IDOA was not following state law and requesting the revocation of Minority Health's MBE certification. The IDOA did not decertify Minority Health. According to Midwest, Minority Health continued to provide mental health services under its subcontract with Corizon "in direct violation of IC 4–13–16.5–1[ ], which provides that a non-profit corporation cannot provide services that would 'impede competition among [for-profit] minority business enterprises.'" *Id.* at 19. As a result, Midwest suffered damages in lost contracts.

Midwest requested the following relief: (1) a judgment declaring that Minority Health is not eligible for MBE certification to the extent that it does the same type of work as Midwest, that Corizon's subcontract with Minority Health is invalid, and that Kirkland's roles presented a conflict of interest; (2) an injunction decertifying Minority Health as an MBE, enjoining the IDOA from contracting with Corizon for provision of mental health services to the extent that Corizon subcontracts with Minority Health for said services, and enjoining Minority Health from providing health services under its subcontract with Corizon; (3) damages; and (4) attorney's fees and costs.

After Appellees filed their answers and the pleadings had closed, Corizon moved for judgment on the pleadings on the grounds that Midwest lacked standing to challenge the subcontract between Corizon and Minority Health and that the statutory provision on which Midwest based its request to decertify Minority Health, Indiana Code Section 4–13–16.5–1(h)(6), was inapplicable because it was enacted after the subcontract went into effect. Subsequently, Minority Health filed a motion for judgment on the pleadings, or in the alternative a motion to dismiss, on the grounds that Midwest lacked standing to challenge Minority Health's MBE certification. The IDOA, Everson, and Kirkland also moved for judgment on the pleadings on the grounds that Midwest lacked standing and failed to state a claim against the IDOA for which relief could be granted.

After extensive briefing, on January 19, 2011, the trial court heard oral argument on the motions for judgment on the pleadings. Midwest requested that the trial court make specific findings of fact and conclusions thereon so that Midwest would know whether it would be futile to amend its complaint to cite the pre–2007 version of Indiana Code Section 4–13–16.5–1, which, it argued, excluded non-profit organizations from obtaining MBE certification. The trial court asked the parties to submit proposed findings of fact and conclusions thereon, and the parties did so.

On February 17, 2011, the trial court entered findings and conclusions granting the Appellees' motions for judgment the pleadings. In relevant part, the trial court's order states,

### CONCLUSIONS OF LAW

3. Midwest was not a party to DOA's certification of [Minority Health] and was not "aggrieved or adversely affected" by DOA's administrative decision to

---

4. Midwest's complaint to the IDOA was attached as "Exhibit A" to its complaint for damages, declaratory judgment, and injunction filed in Marion Superior Court.

not decertify [Minority Health] because Midwest has no legally protected interest in a subcontract with [Corizon]. Midwest therefore lacks standing to judicially challenge DOA's decision to not decertify [Minority Health].

4. Declaratory relief or damages are only obtainable where a legal right or interest is affected. Midwest has no legally protected right or interest to subcontract with [Corizon], even if [Minority Health] were to be decertified, there is no guarantee that [Corizon] would contract with Midwest. Midwest's wish that IDOA replace [Corizon's] contracting decisions with Midwest's business desires does not confer standing and is not appropriate for judicial review. Unsuccessful bidders have no right to challenge an award of a government contract to another competitor, or subcontractor. Accordingly, Midwest's claims fail as a matter of law.

*Id.* at 12–13 (citations omitted). The trial court further concluded that even if Midwest were to amend its complaint to cite the pre–2007 version of Indiana Code Section 4–13–16.5–1, the amended complaint would fail as a matter of law because the prior version of the statute permitted non-profit corporations to be MBE-certified. Midwest appeals.

### Discussion and Decision

#### *Standard of Review*

A judgment on the pleadings pursuant to Indiana Trial Rule 12(C) attacks the legal sufficiency of the pleadings. *Nat'l R.R. Passenger Corp. v. Everton by Everton*, 655 N.E.2d 360, 363 (Ind.Ct.App. 1995), *trans. denied* (1996). "A judgment on the pleadings is proper only when there are no genuine issues of material fact and when the facts shown by the pleadings clearly establish that the non-moving party cannot in any way succeed under the facts and allegations therein." *Eskew v. Cornett*, 744 N.E.2d 954, 956 (Ind.Ct.App. 2001), *trans. denied.* Our review of a trial court's decision on a motion for judgment on the pleadings is de novo.[5] *Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 (Ind.Ct.App.2001), *trans. denied.* "When we consider a motion for judgment on the pleadings, we deem the moving party to have admitted all facts well-pleaded and the untruth of [its] own allegations that have been denied." *Rosby Corp. v. Townsend, Yosha, Cline & Price*, 800 N.E.2d 661, 664 (Ind.Ct.App.2003), *trans. denied* (2004). "All reasonable inferences are drawn in favor of the nonmoving party and against the movant." *Shepherd v. Truex*, 823 N.E.2d 320, 324 (Ind.Ct.App. 2005).

Midwest argues that the trial court improperly granted the motions for judgment on the pleadings because Midwest does have standing to pursue its claims. "'The judicial doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's

---

5. We observe that the trial court entered findings of fact and conclusions thereon. While normally the requested entry of specific findings and conclusions triggers a different standard of review, it does not do so when we review the grant of a motion for judgment on the pleadings because such a judgment is appropriate only where there are no genuine issues of material fact to be resolved. As such, we are not bound by the trial court's findings and conclusions. *See In re Remonstrance Appealing Ordinance Nos. 98–004, 98–005, 98–006, 98–007 & 98–008, of Town of Lizton,* 769 N.E.2d 622, 627 (Ind.Ct.App. 2002) (discussing standard of review in terms of the grant of a motion for summary judgment, which is proper only where there are no genuine issues of material fact to be resolved); Ind. Trial Rule 52(A) ("Findings of fact are unnecessary on decision of motions under Rules 12 or 56.").

power.'" *Nat'l Wine & Spirits Corp. v. Ind. Alcohol & Tobacco Comm'n,* 945 N.E.2d 182, 184 (Ind.Ct.App.2011) (quoting *Hauer v. BRDD of Ind., Inc.,* 654 N.E.2d 316, 317 (Ind.Ct.App.1995), *trans. denied* (1996)), *trans. dismissed.* "'The standing requirement is a limit on the court's jurisdiction which restrains the judiciary to resolving real controversies in which the complaining party has a demonstrable injury.'" *Id.* (quoting *Schloss v. City of Indianapolis,* 553 N.E.2d 1204, 1206 (Ind. 1990)). "Under our general rule of standing, only those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct will be found to have standing." *State ex rel. Cittadine v. Ind. Dep't of Transp.,* 790 N.E.2d 978, 979 (Ind.2003).

■■■ In its complaint, Midwest sought declaratory relief with respect to two different contracts: Corizon's subcontract with Minority Health and Corizon's contract with the IDOA. Midwest also sought declaratory relief as to Minority Health's MBE certification and to Kirkland's roles on the M/WBE Commission and Minority Health's board of directors. Indiana Code Section 34–14–1–2 defines persons who may obtain declaratory judgment:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

"In order to obtain declaratory relief, the person bringing the action must have a substantial present interest in the relief sought." *Hibler v. Conseco, Inc.,* 744 N.E.2d 1012, 1023 (Ind.Ct.App.2001). "The basis of jurisdiction under the Declaratory Judgment Act is a justiciable controversy or question, which is clearly defined and affects the legal right, the legal status, or the legal relationship of parties having adverse interests." *Little Beverage Co., Inc. v. DePrez,* 777 N.E.2d 74, 83 (Ind.Ct.App.2002).

■■■ We will first consider Midwest's standing regarding the two contracts and address Midwest's standing as to Minority Health's MBE certification and Kirkland's alleged conflict of interest separately. As to the two contracts, it is undisputed that Midwest was not a party to either, was not in privity with the parties, and was not a third party beneficiary. Accordingly, Midwest has no rights under either contract and cannot establish standing as a person interested under the contracts. *See Harold McComb & Son, Inc. v. JPMorgan Chase Bank, NA,* 892 N.E.2d 1255, 1258 (Ind.Ct.App.2008) ("Only the parties to a contract, those in privity with the parties, and intended third-party beneficiaries under the contract may seek to enforce the contract.").

Nevertheless, Midwest asserts that it has standing because it is an "aggrieved" person under the Public Purchasing Act, Indiana Code Article 5–22. Midwest relies on Indiana Code Section 5–22–19–2, which provides, "A person *aggrieved* by a determination under this article [for the expenditure of public funds by a government body] may file a petition for judicial review of that determination in a court of appropriate jurisdiction."[6]

---

6. Midwest implicitly assumes, without argument or citation, that if it has standing pursuant to Indiana Code Section 5–22–19–2 to challenge the contract between the IDOA and

"To be a 'person aggrieved,' a person must have suffered or be likely to suffer in the immediate future harm to a pecuniary, property, or personal interest." *City of Fort Wayne v. Pierce Mfg., Inc.*, 853 N.E.2d 508, 518 (Ind.Ct.App.2006), *trans. denied.* "A mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Id.*, at 519.

Midwest contends that it is aggrieved because (1) it is the only for-profit MBE-certified business providing the same mental health services as Minority Health and (2) if Minority Health were decertified, then "Corizon would have no choice but to subcontract with Midwest" due to "the IDOA's agreements concerning use of MBEs with [Corizon]." [7] Appellant's Br. at 5. Midwest's reliance on Section 5–22–19–2 is unavailing.

Generally, an unsuccessful bidder does not have standing to challenge the award of a government contract under the Public Purchasing Act. *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 338–39 (Ind.2005); *Shook Heavy & Envtl. Constr. Group v. City of Kokomo*, 632 N.E.2d 355, 357 (Ind.1994).[8]

Moreover, the contract between the IDOA and Corizon is one for personal services. Indiana Code Section 5–22–6–1 provides that "[t]he purchasing agency of a governmental body may purchase services using any procedure the governmental body or the purchasing agency of the governmental body considers appropriate." "Under Chapter 5–22–6, government bodies are afforded nearly absolute discretion in purchasing services." *Hamrick's Diesel Serv. & Trailer Repair, LLC v. City of Evansville ex rel. Bd. of Pub. Works*, 935 N.E.2d 764, 766 (Ind.Ct.App.2010), *trans. denied* (2011). Due to the statutory discretion granted to governmental entities in awarding contracts for services, Indiana courts have consistently held that unsuccessful bidders do not have standing to challenge the award of government contracts for services. *See id.* at 767 (concluding that unsuccessful bidder on city contract for towing services did not have standing in suit against city for damages after city awarded towing contract to bidder which did not meet requirements specified in bid announcement); *Harmony Health Plan of Ind., Inc. v. Ind. Dep't of Admin.*, 864 N.E.2d 1083, 1091–92 (Ind.Ct.App.2007) (concluding that unsuccessful bidder on

---

Corizon, it necessarily has standing to challenge Corizon's contracts with its subcontractors. Because we do not know the content of the contract between IDOA and Corizon, we will proceed, for purposes of this opinion only, as if Midwest's assumption is true.

7. Midwest also asserts that it may pursue its action independent of Indiana Code Section 5–22–19–2 because it requested damages, which the IDOA cannot award. Appellant's Br. at 5 n. 3. Midwest cites *Guthrie v. McIntyre*, 563 N.E.2d 651 (Ind.Ct.App.1990), but that case dealt with exhaustion of administrative remedies. We conclude that Midwest has waived this issue. *See Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 514 (Ind. Ct.App.2005) ("A party generally waives any issue for which it fails to develop a cogent argument or support with adequate citation to

authority and portions of the record."), *trans. denied* (2006); Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22").

8. In *Shook*, our supreme court held that a statutory right to enforce the public purchasing laws applied (1) to citizens or taxpayers of the municipality in question pursuant to the Public Lawsuit Statute, and (2) where the government entity and successful bidder have engaged in collusion or fraud pursuant to the Indiana Antitrust Act. 632 N.E.2d at 357–58. Midwest's theory of recovery is not based on either possibility.

state contract for Medicaid program lacked standing to seek judicial review of State's rejection of. its bid because State had authority to exercise discretion under public purchasing statutes to decide who would receive contracts to provide services, and therefore bidder was not harmed when it was not selected), *trans. denied* (2011); *Trans–Care, Inc. v. Bd. of Comm'rs of the Cnty. of Vermillion*, 831 N.E.2d 1255, 1259 (Ind.Ct.App.2005) (concluding that unsuccessful bidder. lacked standing to challenge county's award of contract for provision of emergency medical services to another business because when a party submits a proposal to perform personal services, it has no legal right to have its bid considered).

Midwest does not discuss either *Hamrick's Diesel* or *Trans–Care*, but it does attempt to distinguish this case from *Harmony Health*. Midwest recognizes the discretionary nature of awarding government contracts for services, but argues that it does not seek to substitute its business judgment for that of the IDOA. Instead, Midwest argues that this case is different because it "seeks a determination that [Minority Health] was an ineligible subcontractor." Appellant's Br. at 5. Midwest contends that as a for-profit business, it has a protected interest derived from Indiana Code Section 4–13–16.5–1.[9] Specifically, Midwest argues that the pre–2007 version of Indiana Code Section 4–13–16.5–1 did not permit non-profit corporations to be certified MBEs[10] and that the post–2007 statute provides protection to for-profit businesses from the competition of non-profit corporations.[11]

■ We are unpersuaded. The state's annual goals for the use of MBEs do not significantly limit the IDOA's discretion in contracting for services such that Midwest can be. said to have a pecuniary, property, or personal interest that is harmed by the IDOA's decisions regarding contracts. MBE and WBE goals "may be met through the use of prime contractors, subcontractors, suppliers, joint ventures, or other arrangements that afford meaningful

---

**9.** Midwest asserts that it has a "legitimate claim of entitlement" derived from Indiana Code Section 4–13.16.5–1. Appellant's Br. at 6; Reply Br. at 1. Midwest takes this language from *Harmony Health*. 864 N.E.2d at 1091. However, *Harmony Health* cited *All–Star Construction & Excavating, Inc. v. Board of Public Works*, 640 N.E.2d 369, 371 (Ind. 1994), in which the court was analyzing a constitutional claim based on the deprivation of property without due process:

> However, while there can be no protected property interest in adherence to established procedure, a protected interest may be found in the benefit whose enjoyment is sought to be regulated by the procedure. To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it that is derived from statute, legal rule or mutually explicit understanding.

As best we can tell, Midwest is not asserting a violation of the Fourteenth Amendment to the United States Constitution.

**10.** The pre–2007 version of the statute defined an MBE as a business "owned or controlled" by a "minority group" and did not explicitly mention non-profit corporations. Ind.Code § 4–13–16.5–1 (2004). Indiana Code Section 4–13–16.5–1 was amended effective July 2007. Pub. Law 228–2007. The 2007 amendments added non-profit corporations to the definitions of MBE and "owned or controlled" and added a specific definition for qualified minority or women's non-profit corporation. There have been additional amendments to the statute that are not relevant to this appeal.

**11.** The 2007 amendments to Indiana Code Section 4–13–16.5–1 added the provision that a "[q]ualified minority or women's nonprofit corporation" is one that, among other things, "(6) provides a service that will not impede competition among minority business enterprises or women's business enterprises at the time a nonprofit applies for certification as a minority business enterprise or a women's business enterprise." Pub. Law 228–2007.

opportunities for MBE and WBE participation." 25 Ind. Admin. Code 5–7–3(b). In addition, "[g]oals may vary on individual contracts." 25 Ind. Admin. Code 5–7–3(f). Apparently, a primary contractor may compete for and win a state contract even if it or its subcontractors do not qualify as MBEs so long as the IDOA's state goal can be met through other means. We observe that "[a] mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Pierce,* 853 N.E.2d at 519. Given the wide discretion that IDOA may exercise in awarding government contracts for services, we must conclude that Indiana Code Section 4–13–16.5–1 does not provide Midwest with a pecuniary, property, or personal interest in the award of government contracts. *See id.* at 518–20 (concluding that unsuccessful bidder did not have a pecuniary, property, or personal interest harmed by city's decision to buy fire trucks from other business and therefore was not aggrieved under Ind.Code Section 5–22–19–2).

In another argument, Midwest contends that even if we find that "Midwest is not sufficiently aggrieved, it may still pursue the action as an exception to the substantial present interest test." Appellant's Br. at 6; *see Hibler,* 744 N.E.2d at 1023 ("In order to obtain declaratory relief, the person bringing the action must have a substantial present interest in the relief sought."). Midwest directs us to *In re Guardianship of E.N.,* 877 N.E.2d 795 (Ind.2007), in which our supreme court noted that other jurisdictions recognized an exception to the substantial present interest requirement and described that exception as follows:

> where a present right depends upon a decision as to a future right, where there are special circumstances satisfying the court that it is desirable to make a declaration presently as to future rights, or

where a present determination of a right contingent on a future event may serve a real practical need of the parties for guidance in their future conduct.

*Id.* at 801 (citation omitted).

The parties dispute whether an exception to the substantial present interest test exists in Indiana. In *E.N.,* the supreme court chose not to decide whether Indiana would recognize that exception because it concluded that the exception would not apply in that case anyway. 877 N.E.2d at 801. We, too, need not decide whether to recognize the exception to the substantial interest test because even if there were an exception, it would not apply to Midwest. Midwest asserts that "if it were determined in the future that [Minority Health] was not eligible for the MBE certification, Midwest would be able to claim a present right to the subcontract with [Corizon]." Appellant's Br. at 6. We disagree. "A party cannot be forced to accept a contract not of his own choosing." *Navin v. New Colonial Hotel,* 228 Ind. 128, 134, 90 N.E.2d 128, 130 (1950) (citation and quotation marks omitted). "Every one [sic] has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." *Id.* (citation and quotation marks omitted). We conclude that Midwest does not having standing to seek a declaratory judgment regarding the contracts at issue here.

We now address whether Midwest has standing to obtain declaratory relief regarding Minority Health's MBE decertification and Kirkland's alleged conflict of interest. The M/WBE program, including MBE certification, is governed by Indiana Code Sections 4–13–16.5–1 to –9. Indiana Code Section 4–13–16.5–9 provides,

> (a) The department shall adopt rules under IC 4–22–2 to establish procedures

to resolve grievances arising under this chapter.

(b) The rules may include informal procedures to resolve grievances.

(c) The procedures established under the rules must provide for final resolution of grievances before either of the following:

(1) A panel of three (3) commission members. A panel formed under this subdivision must consist of at least two (2) commission members described in section 2(a)(5) of this chapter.

(2) The commission. However, if the commission acts to resolve a grievance under this subdivision, members of the commission described in section 2(a)(6) or 2(a)(7) of this chapter may not participate in the proceeding.

(d) Final resolution of grievances arising under this chapter are subject to IC 4–21.5 [the Administrative Orders and Procedures Act ("AOPA")[12]].

Standards for processing a written complaint alleging that a currently certified enterprise is not eligible for MBE certification are set forth in 25 Indiana Administrative Code 5–4–1, which provides in relevant part,

(a) This section establishes standards for processing a complaint issued to a challenged enterprise concerning the possible revocation of its certification.

(b) Requirements for ineligibility complaints are as follows:

(1) Any person may file with the department a written complaint:

(A) alleging that a currently certified enterprise is ineligible; and

(B) specifying the alleged reasons why the enterprise is ineligible.

The department is not required to accept a general allegation that an enterprise is ineligible or an anonymous complaint. The complaint may include any information or arguments supporting the complainant's assertion that the enterprise is ineligible and should not continue to be certified.

(2) *The department must review:*

(A) its records concerning the enterprise;

(B) any material provided by the enterprise and the complainant; and

(C) other relevant information.

The department may request additional information from the enterprise or conduct any other investigation deemed necessary.

(3) If the department determines, based on this review, that there is reasonable cause to believe that the enterprise is ineligible, the department must provide written notice to the enterprise that it proposes to find the enterprise ineligible, setting forth the reasons for the proposed determination. *If the department determines that such reasonable cause does not exist, it must notify the complainant and the enterprise in writing of this determination and the reasons for it. All statements of reasons for findings on the issue of reasonable cause must specifically reference the evidence in the record on which each reason is based.*

---

**12.** Indiana Code Section 4–21.5–2–5(11) provides that "[t]his article does not apply to any of the following agency actions: ... (11) the acquisitions, leasing, or disposition of property or procurement of goods or services by contract." The contracts at issue here are for the acquisition of mental health services, and therefore Midwest cannot seek relief related to either contract pursuant to the AOPA. *See Harmony Health*, 864 N.E.2d at 1092 (concluding that AOPA did not apply to unsuccessful bidder for provision of health services through State Medicaid program).

. . . .

(e) The department may issue an order requiring an enterprise to show cause why its certification as an MBE or a WBE should not be revoked as provided in subsection (a), (b), or (c). In such case, the enterprise shall be entitled to a hearing as set forth in section 2 of this rule.

(f) The department may base a decision to revoke certification only on one (1) or more of the following:

(1) Changes in the enterprise's circumstances since the certification of the enterprise by the department that render the enterprise unable to meet the eligibility standards of this rule.

(2) Information or evidence not available to the department at the time the enterprise was certified.

(3) Information that was concealed or misrepresented by the enterprise in previous certification actions by the department.

(4) A change in the certification standards or requirements since the enterprise was certified.

(5) A documented finding that the department's initial determination to certify the enterprise was clearly erroneous.

(Emphases added).

■ Here, Midwest's complaint shows that it sent a written complaint to the IDOA and that the IDOA "refused to decertify Minority Health." Appellant's App. at 19. It is unclear whether all procedures for resolving Midwest's grievance regarding Minority Health's certification have been carried out as required by Indiana Code Section 4–13–16.5–9 and 25 Indiana Administrative Code 5–4–1. Thus, Midwest's complaint is insufficient on its face to allege standing for judicial review of the IDOA's decertification process and Kirkland's alleged conflict of interest.

■ As a final matter regarding judicial review of the IDOA's decertification process, we observe that the trial court concluded that it "will defer to the MBE certification determinations of DOA, under the doctrine of primary jurisdiction and will give deference to DOA's expertise and decisions about [Minority Health's] MBE certification." Appellant's App. at 15. The trial court's application of the doctrine of primary jurisdiction is improper in that the doctrine does not involve judicial deference to agency decisions. Instead, as explained by our supreme court,

The doctrine of primary jurisdiction is an invention of the United States Supreme Court to deal with the problem that arises when the courts and an agency both have claims to jurisdiction of an issue in a case that has come before a court. . . . "The doctrine of primary jurisdiction comes into play when a claim is cognizable in a court but adjudication of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views." *Hansen v. Norfolk & Western Ry. Co.*, 689 F.2d 707, 710 (7th Cir.1982).

. . . .

The doctrines of primary jurisdiction and exhaustion of remedies . . . are related but *significantly* different. The doctrine of primary jurisdiction is not . . . jurisdictional but prudential; the doctrine of exhaustion of remedies, on the other hand, is jurisdictional and, where applicable, makes a Trial Rule 12(B)(1) motion for lack of jurisdiction over the subject matter appropriate.

. . . .

[I]n order to determine whether a case is properly before the trial court, the court should examine each issue presented by the case. If at least one of the issues involved in the case is within the jurisdiction of the trial court, the entire case falls within its jurisdiction, even if one or more of the issues are clearly matters for exclusive administrative or regulatory agency determination. Where at least one of the issues or claims is a matter for judicial determination or resolution, the court is not ousted of subject matter jurisdiction by the presence in the case of one or more issues which arguably are within the jurisdiction of an administrative or regulatory agency.

Once a trial court has determined that it has subject matter jurisdiction, it must review the issues in the case claimed to be matters within the purview of an administrative or regulatory agency to determine whether the doctrine of primary jurisdiction should be invoked, *i.e.*, whether the court, while retaining jurisdiction over the case, should refer an issue or some subset of issues in the case to the expert agency for its opinion or final decision.

*Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 645–46 (Ind. 1995).

In summary, we conclude that Midwest lacks standing to challenge the contracts between Corizon and Minority Health and Corizon and the IDOA because it was not a party to the contracts, was not in privity with the parties, and was not a third party beneficiary of the contracts. Midwest cannot attain standing through Indiana Code Section 5–22–19–2 because it is not an

aggrieved person.[13] In addition, the allegations in Midwest's complaint do not show that it has standing to bring a judicial challenge to the IDOA proceedings regarding Minority Health's MBE decertification or the allegations of a conflict of interest. Accordingly, we affirm the trial court's grant of the Appellees' motions for judgment on the pleadings.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.

---

13. Given our resolution of this issue, we need not address Midwest's arguments regarding primary jurisdiction, 25 Indiana Administrative Code 5–4–1(h)(2) (dealing with treatment

of primary contractor when a subcontractor's MBE certification is revoked), or amending the complaint to change the date of the applicable statute.