# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH M. AGARD**
Law Office of Deborah M. Agard
Indianapolis, Indiana

APPELLEES PRO SE:

**SEIJI BRYANT**
**JOSEPH BREWSTER**
Anderson, Indiana



FILED

Mar 27 2013, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE GUARDIANSHIP OF A.J.A. and L.M.A., Minor Children, | ) ) ) | |
| J.C., | ) ) | |
| Appellant-Intervenor, | ) ) | |
| vs. | ) ) | No.  48A02-1204-GU-326 |
| J.B. and S.B., | ) ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE MADISON SUPERIOR COURT 2
The Honorable G. George Pancol, Judge
Cause No. 48D02-1011-GU-367

**March 27, 2013**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

Paternal Grandmother J.C. (Grandmother) appeals from the trial court's order vacating the grandparent visitation rights she had enjoyed since 2009 on the basis that the trial court that initially granted these rights lacked the statutory authority to do so. Among other things, Grandmother contends that her lack of standing under the Grandparent Visitation Act was waived when her granddaughters' guardians, J.B. and S.B. (collectively, "the Guardians"), failed to appeal the original order. The Guardians cross-appeal, arguing that even if their objection to the original order was waived, Grandmother's appeal is nevertheless moot because S.B., a non-relative, and J.B. have since adopted the girls, and grandparent visitation rights do not survive adoption by a non-relative.

We conclude that although Grandmother did lack standing to pursue the original grandparent visitation order, the Guardians' objections to her want of standing were waived when they failed to appeal the original order. We also conclude that Grandmother's visitation rights were not terminated by the adoption because the girls were not adopted only by S.B. but also by J.B., who is their uncle. As a result, we reverse the judgment of the trial court.

FACTS

On April 23, 2008, M.A. shot his wife multiple times, killing her. Their two little girls, A.J.A. and L.M.A., were present at the home at the time of the murder. That same day, M.A.'s half brother, J.B., and J.B.'s partner, S.B., took A.J.A. and L.M.A. into their

2

home. Soon thereafter, J.B. and S.B. filed for guardianship of the girls with the support of both families.

In May, the Guardians enrolled A.J.A. in counseling with Jean Manis, a licensed clinical social worker. A.J.A. was diagnosed with Post-Traumatic Stress Disorder.

On June 5, 2008, J.B. asked Grandmother to pick A.J.A. up from a counseling session. When Grandmother arrived, she took A.J.A. to the parking lot of the jail where M.A. was being held in pre-trial detention. Grandmother told A.J.A. that her daddy was living there and that he was safe. Grandmother had A.J.A. get out of the car, and M.A., who was outside for recreation time, yelled to A.J.A. that he loved her. Grandmother did not inform J.B. or S.B. that she took A.J.A. to the jail until after A.J.A. told them. Consequently, J.B. told Grandmother that she could no longer see the children without supervision because he could not trust her judgment.

The guardianship was granted on July 3, 2008. On July 10, 2008, Grandmother filed a motion to intervene in the guardianship and a petition for grandparent visitation with A.J.A. and L.M.A. Grandmother's motion to intervene was granted over the objection of the Guardians, who argued that Grandmother did not have standing to pursue grandparent visitation because she was the mother of M.A., who was still living.

In August 2008, the parties agreed to a provisional visitation schedule that allowed for one hour of weekly supervised visitation for Grandmother for a six-week period. The parties also agreed to start family counseling at Anderson Psychiatric Clinic to try to facilitate further visitation. The guardianship court approved the provisional agreement.

Evidence on Grandmother's visitation petition was presented by both parties over four hearings in February, April, and May 2009. On June 1, 2009, the trial court entered an order granting Grandmother unsupervised grandparent visitation according to a strict schedule.

After Grandmother's visitation petition was granted, the Guardians filed a motion to correct error, arguing that the trial court erred by granting the petition and by failing to make specific findings of fact and conclusions of law. On July 6, 2009, the trial court issued an amended order with specific findings of fact and conclusions of law but kept the remainder of the prior order intact. The Guardians did not appeal the amended order.

The Guardians filed a petition to adopt A.J.A. and L.M.A. in October 2009 after the maternal aunt of A.J.A. and L.M.A. filed an adoption petition the month before. In November 2010, the parties agreed to transfer the guardianship case to Madison Superior Court II to be consolidated with the pending adoption matters. On April 5, 2011, Grandmother filed a preemptive "Objection to Modification of Grandparent Visitation." Appellant's App. p. 69.

In July 2011, a parenting coordinator was appointed to assist the Guardians in facilitating visitation with the girls' maternal aunt and other grandparents. On January 9, 2012, the parenting coordinator submitted documentation to the court stating that on at least one occasion in December 2011, Grandmother had initiated a telephone conversation between M.A. and one of the children. The parenting coordinator recommended that all future grandparent visitation for Grandmother be supervised. On

4

January 19, 2012, a hearing was held on the parenting coordinator's recommendation. The court did not restrict Grandmother's visitation but instead admonished her from facilitating any type of contact between M.A. and the children during her visitation in the future.

Later that same day, the Guardians filed a petition to terminate Grandmother's visitation. In their petition, the Guardians argued that Grandmother never had standing under the grandparent visitation statute and that, therefore, the trial court had lacked subject-matter jurisdiction to enter the original grandparent visitation order. On February 28, 2012, Grandmother filed her response, which alleged that the Guardians had waived their standing argument by consenting to the provisional visitation agreement and by failing to appeal the original grandparent visitation order.

On March 7, 2012, the trial court held a hearing on the Guardians' motion to terminate grandparent visitation. The attorneys for Grandmother and the Guardians made legal arguments on the motion to terminate grandparent visitation, but no further evidence was presented as to the grandparent visitation issue.

On March 26, 2012, the trial court found that the original grandparent visitation order was void for lack of subject-matter jurisdiction because the court had lacked the authority to grant Grandmother visitation rights when she was not the parent of the girls' deceased parent and the marriage of the girls' parents had not been dissolved at the time

of their mother's death. Based on these conclusions, the trial court vacated the grandparent visitation order. Grandmother now appeals.[1]

## DISCUSSION AND DECISION

Grandmother challenges the trial court's order terminating her grandparent visitation rights on two grounds: (1) Grandmother did have standing because M.A.'s marriage was dissolved when he murdered his wife; and (2) the Guardians waived their objection to her lack of standing by failing to appeal the original grandparent visitation order. The Guardians cross-appeal, claiming that because they have since adopted A.J.A. and L.M.A. and S.B. is not biologically related to them, Grandmother's visitation rights, to the extent they ever existed, cannot survive.

## I. Mootness

We first address whether Grandmother's appeal is moot because A.J.A. and L.M.A. have since been adopted by J.B., who is their biological father's half brother, and S.B., who is J.B.'s partner. The Guardians contend that because S.B. is not biologically related to A.J.A. and L.M.A., the adoption terminated any grandparent visitation rights enjoyed by Grandmother.

Indiana Code section 31-17-5-9 provides that grandparent visitation rights survive the adoption of the child by a stepparent or certain biologically-related relatives,

---

[1] On November 15, 2012, Grandmother filed a motion to strike certain materials from the Guardians' appendix. This motion is granted in part as to pages 67 to 77 and 91 to 92 of the Guardians' appendix. Grandmother also requests attorney fees pursuant to Appellate Rule 66(E) on the basis that the Guardians' inclusion of these materials was bad faith. We think otherwise and decline Grandmother's invitation to award attorney fees.

including an uncle. In interpreting the statutory language of the Act, we apply a de novo standard of review. In re Guardianship of E.N., 877 N.E.2d 795, 798 (Ind. 2007). We strive to give effect to the intent of the legislature, and we recognize that "the best evidence of legislative intent is the language of the statute itself." Cubel v. Cubel, 876 N.E.2d 1117, 1120 (Ind. 2007). "[T]he words in a statute must be given their plain and ordinary meaning unless otherwise indicated by the statute." Id.

We note that Indiana Code section 31-17-5-9 does not state that adoption by a non-relative terminates grandparent visitation; rather, it provides situations when grandparent visitation rights survive, and adoption by a biologically-related uncle is one of those situations. The Guardians assert that because J.B. is a half brother rather than a "full blooded brother" to M.A., he is not an "uncle" under the statute. Appellees' Br. p. 16. However, the plain and ordinary meaning of "uncle" is "[t]he brother of one's mother or father." American Heritage Dictionary of the English Language 1394 (1978). And "brother" is defined as "[a] male having the same mother and father as another, full brother, or one having one parent in common with another, half brother." Id. at 169. Accordingly, J.B. is an "uncle" under the statute such that Grandmother's grandparent visitation rights, to the extent they existed, survived his adoption of A.J.A. and L.M.A. The fact that S.B. also adopted the girls is not dispositive. Grandmother's appeal is not moot.

## II. Grandmother's Claims

7

As noted above, Grandmother contends that she had standing to pursue grandparent visitation because M.A.'s marriage was dissolved when he murdered his wife, and that even if she did not have standing, the Guardians nevertheless waived their objections to her standing when they failed to appeal the original order.

Today, the Grandparent Visitation Act (the Act) provides the sole remedy for grandparents seeking court-ordered visitation with their grandchildren.[2] Pursuant to the Act, a grandparent may seek visitation if: (1) the child's parent is deceased; (2) the marriage of the child's parents has been dissolved in Indiana; or (3) the child was born out of wedlock. Ind. Code § 31-17-5-1. Moreover, grandparent visitation rights may only be granted if a court determines that the visitation will be in the best interests of the child. I.C. § 31-17-5-2(a).

For a grandparent to have standing on the basis of the child having a deceased parent, that grandparent must be the parent of the deceased. In re Visitation of C.R.P., 909 N.E.2d 1026, 1028 (Ind. Ct. App. 2009). Here, Grandmother is the parent of M.A., who is still alive, albeit likely incarcerated at least until the girls reach the age of majority.[3] Nevertheless, it appears that Grandmother was erroneously granted initial

---

[2] Although many of this Court's decisions refer to the Act as being enacted in derogation of the common law, this is not entirely correct as there were some common law visitation rights afforded to grandparents prior to its enactment. See In re Guardianship of Green, 525 N.E.2d 634, 636 (Ind. Ct. App. 1988) (stating that despite the existence of preexisting common law rights, the courts have since strictly limited grandparent visitation to the grounds recognized in the Act).

[3] M.A. was sentenced to serve sixty years in the Indiana Department of Correction.

grandparent visitation rights on the basis of the children's mother being deceased. Appellant's App. p. 51.

Grandmother now argues that the original trial court did not state on what basis it found she had standing and that it could have granted her standing on the basis that her son's marriage was dissolved by virtue of him killing his wife. Because Grandmother did not raise this argument in the underlying proceedings, it is waived on appeal. See Hite v. Vanderburgh Cnty. Office of Family & Children, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006).

Waiver notwithstanding, however, Grandmother's argument still fails. It is true that "dissolved" is not defined under the Act. However, we think that in context, the term clearly refers to a marriage being terminated by a final dissolution decree. See Ind. Code § 31-9-2-41 (defining "dissolution decree" as a "judicial decree . . . [that] has the effect of terminating the marriage and restoring the parties to the state of unmarried persons"); Ind. Code § 31-15-2-16(d) (referring to a dissolution decree as a "decree that dissolves the marriage"). Moreover, to give this subsection the interpretation desired by Grandmother—that a marriage is dissolved when one of the parents is killed by the other—would render the first subsection meaningless. See Pabey v. Pastrick, 816 N.E.2d 1138, 1148 (Ind. 2004) (stating that courts should not presume that the legislature would enact a useless provision and thus should attempt to give effect to every word of a statute). Therefore, Grandmother had no standing to seek grandparent visitation under the Act.

9

As noted above, however, Grandmother contends that the Guardians' failure to appeal the original visitation order results in a waiver of her lack of standing under the Act. More particularly, Grandmother asserts that her lack of standing resulted only in the trial court having no jurisdiction over the case as opposed to no subject-matter jurisdiction. Our Supreme Court has disapproved of the use of the term "jurisdiction over the case" because it confuses subject-matter jurisdiction, which cannot be waived, with legal errors that may be waived. K.S. v. State, 849 N.E.2d 538, 540-41 (Ind. 2006). According to K.S., where subject-matter jurisdiction and personal jurisdiction exist, "a court's decision may be set aside for legal error only through direct appeal and not through collateral attack." Id. at 540.

Subject-matter jurisdiction exists where "a court has jurisdiction over the general class of actions to which a particular case belongs." Troxel v. Troxel, 737 N.E.2d 745 N.E.2d 745, 749 (Ind. 2000). Here, the trial court undoubtedly had jurisdiction to hear grandparent visitation cases generally. See Ind. Code § 33-29-1-1.5(1) (stating that superior courts have original jurisdiction over all civil and criminal cases). In addition, there is no question that the court had personal jurisdiction over the parties, with the Guardians submitting to the authority of the court by filing the initial guardianship proceedings and Grandmother submitting to the court's authority by intervening in those proceedings. See Ind. Trial Rule 4(A).

Nevertheless, the Guardians maintain that the initial grandparent visitation order was void ab initio because the legislature never intended for Grandmother to have

10

standing to pursue visitation. The Guardians seek to distinguish K.S. by directing us to M.S. v. C.S., 938 N.E.2d 278 (Ind. Ct. App. 2010). In M.S., this Court held that a joint custody order between a parent and a third party was void because the trial court lacked the statutory authority to enter such an order "under any set of circumstances, and the error was therefore impossible to cure." 938 N.E.2d at 284.

Although M.S. was decided after K.S., it failed to address any implications that K.S. might have had on its analysis and instead relied upon pre-K.S. reasoning from earlier opinions of the Court of Appeals. In light of the above-quoted language from K.S., however, we decline to follow the paradigm for void and voidable judgments as explained in M.S. Accordingly, we conclude that although the initial grandparent visitation order may have been erroneous, the Guardians nevertheless waived their objections to Grandmother's standing when they failed to appeal.

Notwithstanding this conclusion, we note that the trial court "may modify an order granting or denying [grandparent] visitation rights whenever modification would serve the best interests of the child." I.C. § 31-17-5-7. Given that nearly a year has passed since the grandparent visitation order has been vacated, it may be wise for the trial court to schedule a hearing sua sponte on the children's best interests to determine whether and to what extent grandparent visitation should occur in the future.

The judgment of the trial court is reversed.

RILEY, J., and BARNES, J., concur.

11