INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION, of the State of Indiana, Appellant (Defendant Below),

v.

COMMERCIAL TOWEL & UNIFORM SERVICE, INC., Appellee (Plaintiff Below).

INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION, of the State of Indiana, Appellant (Defendant Below),

v.

CROWN LAUNDRY & CLEANING CO. OF LAFAYETTE, INC., Appellee (Plaintiff Below).

No. 2–1078A342.

Court of Appeals of Indiana, Second District.

Sept. 8, 1980.

Theodore L. Sendak, Atty. Gen., Wallace T. Gray, Deputy Atty. Gen., Indianapolis, for appellant.

Theodore R. Dann, Dann, Pecar, Newman, Talesnick & Kleiman, Elmer F. Marchino, Indianapolis, Ezra H. Friedlander, Ancel, Friedlander, Miroff & Ancel, Indianapolis, for appellees.

SHIELDS, Judge.

The Indiana Department of State Revenue, Gross Income Tax Division (Department) appeals the trial court's grant of the Motion for Summary Judgment of Appellees, Commercial Towel and Uniform Service, Inc. and Crown Laundry and Cleaning Co. of Lafayette, Inc. (Taxpayers),[1] and the Entry of Judgment ordering a refund of Indiana Corporate Gross Income Taxes previously paid. We reverse.

The issue before us on review is whether the trial court erred in concluding Taxpayers' income was received from the business of dry cleaning and laundering within the meaning of IC 6–2–1–3(d) and accordingly was properly taxed at the rate of one half of one percent (½%).[2]

Taxpayers, whose actions for refund were consolidated by the trial court, are in the business of furnishing clean linen, towels, and uniform service. During the tax periods in question, the fiscal years ending March 31, 1969, March 31, 1970, and March 31, 1971 for Commercial Towel and the fiscal years ending June 30, 1968, June 30, 1969, and June 30, 1970 for Crown Laundry, Taxpayers filed Indiana Corporate Gross Income Tax returns and paid tax on their gross income at the rate of one–half of one percent (½%)–the rate applied to income received from the business of dry cleaning and laundering pursuant to IC 6–2–1–3(d) (Burns Code Ed.).[3]

Throughout the contested tax period, Taxpayers did not own or lease laundering or dry cleaning equipment but, pursuant to written agreements, contracted with separate corporations in the business of dry cleaning and laundering for the provision of necessary laundering services performed on the corporations' premises utilizing their machinery and personnel. The cost to Taxpayers was based on a percentage of the corporations' total expenses. The agreements provided Taxpayers had "complete control of such laundering services" by means of a representative appointed by each Taxpayer. The specific duties, activities, and location of the representative were not stated.

Department, as a result of tax audits, assessed a deficiency against Taxpayers for the difference between the one-half of one percent (½%) rate paid and the two percent (2%) rate applicable to income received from services pursuant to IC 6 2–1–3(g) (Burns Code Ed.).[4]

Taxpayers filed Motions for Protests and Requests for Hearing, which were denied,

1. Commercial Towel and Uniform Service, Inc. is a successor in interest, by way of merger, to the taxpayer corporation in existence during the contested tax period, Atlas Coverall Supply Inc. Crown Laundry and Cleaning Co. of Lafayette, Inc. is the successor in interest, also by way of merger, to Lafayette Coverall Supply, Inc.

2. The trial court did not make Findings of Facts or Conclusions of Law; however, from its Entry of Judgment ordering the return of the deficiency plus interest assessed against Taxpayers, it is assumed the trial court legally concluded Taxpayers' income was received from the business of dry cleaning and laundering within the meaning of IC 6–2–1–3(d) (Burns Code Ed.).

3. IC 6–2–1–3(d) (Burns Code Ed.) provides:
    "(d) With respect to that part of the gross income of every person which is received from the business of dry cleaning and laundering, the rate of tax for such part shall be the appropriate rate set forth in subsection (a) [½%]. This section shall not apply to receipts derived from the operation of coin operated laundry and dry cleaning equipment."

4. IC 6·2 1 3(g) (Burns Code Ed.) reads in pertinent part:
    "(g) With respect to that part of the gross income of every person which is received from any source not enumerated in subsections (a) to (f) inclusive of this section, including, but not in limitation of the foregoing, gross income from professional services, personal services, or services of any character whatsoever, sales of real estate, rentals, all funds received for the performance of contracts, all funds received from the investment of capital, all receipts from retail sales and all

and subsequently received Notice of Tax Due and paid the stipulated amounts. The current actions for refund were filed by Taxpayers in Marion County Superior Court, and were consolidated into the action from which this appeal lies.

Both parties to the litigation focus on Taxpayers' business—whether Taxpayers are "engaged in the business of dry cleaning or laundering"—as the relevant consideration. Department contends Taxpayers "did not have the requisite assets and operations to be classified in the business of laundering and dry cleaning." Taxpayers counter with statements contained in their written agreements with separate corporations as evidence they were in the business of dry cleaning and laundering. Taxpayers also offer an excerpt from Circular IT–33, interpreting IC 6–2–1–3(d), issued by the Department of Revenue June 1, 1968 in support of their position:

"Therefore, the gross income received by dry cleaners and laundries from the furnishing of clean linen, towels, and uniform service commonly considered to be a rental of tangible personal property is subject to the same rate, one–half of one per cent (½ of 1%)."

■ Contrary to the parties' arguments, the controlling factor is not the character of Taxpayers' business, but the source of the income. As stated in *Storen v. J. D. Adams Manufacturing Co.*, (1937) 212 Ind. 343, 348, 7 N.E.2d 941, 943, and quoted with approval in *Indiana Dept. of State Revenue v. Stark-Wetzel & Co.*, (1971) 150 Ind.App. 344, 350, 276 N.E.2d 904, 908:

"The rate does not depend upon the business in which the taxpayer is primarily engaged, but upon the activity from which each item of his gross income is received."

■ The bulk of the tax cases in this area deal with whether the income was derived from retail sales, wholesale sales, manufacturing and similar activity, or the performance of services (the "catchall" category for business income not falling within another provision). Our case requires distinguishing between two inseparable and interdependent services: laundering and dry cleaning services [5] and the rental of linen, towels and uniforms. We must determine which service is the source of the income.

■ The source of the income is a conclusion derived from facts illustrative of a taxpayer's business purpose and its customers' purpose in transacting business with the taxpayer. In the case before us, the uncontested facts clearly indicate the source of the income. Taxpayers sell, and their customers buy, a rental service. The laundering and dry cleaning is simply an expense of the service. Taxpayers' customers contract for a rental service; the activities necessary to that agreement are incidental to the customers' purpose. The rental service is the source of the income.

■ Taxpayers' reliance on a statement in an Indiana tax circular, Circular IT-33 [6] issued by the Department of Revenue June 1, 1968 is without merit since the

receipts received from any source whatsoever, the rate of tax for such part shall for each calendar year be the appropriate rate set forth in subsection (e) [2%]."

5. In *Clark's Laundry and Dry Cleaning Co. v. Dept. of Treasury*, (1937) 103 Ind.App. 359, 5 N.E.2d 683, the court held income received by those engaged in the business of dry cleaning was taxable as income from the performance of a service and was taxed at the higher service income rate. Subsequent to *Clark's* the legislature enacted in 1941 a special category for income earned from the business of dry cleaning and laundering taxable at ½%, IC 6–2–1–

3(d), taking such income out of the general service income category. From the plain wording of the IC 6–2–1–3(d), the special category is applicable only to *income earned from the particular service* and does not apply to all businesses which utilize or perform dry cleaning and laundering services as an incident to their provision of another service.

6. Our reference to Circular IT–33 dated June 1, 1968 is not to be construed as an adoption of the position that rental service companies performing their own laundering and dry cleaning are taxed at the ½% rate pursuant to IC 6–2–

statement is taken out of context. The full context is stated below:

"Therefore, the gross income received by dry cleaners and laundries from the furnishing of clean linen, towels, and uniform service commonly considered to be a rental of tangible personal property is subject to the same rate, one–half of one per cent (½ of 1%). Gross income derived from coin–operated laundries engaged in the same business shall be taxed at the same rate.

"A taxpayer carrying on such rental business *but not performing the dry cleaning and laundering of the property rented* is not engaged in the business of dry cleaning and laundering, and the general two per cent rate (2%) is applicable to the receipts of such taxpayer from the rental of such property." (Emphasis added.)

The circular clearly provides that suppliers of a towel or uniform service who do not perform the laundering services are taxed at the 2% rate.

Taxpayers' reliance on statements contained in written agreements, which they drafted and executed, expressing a desire to be categorized as laundries and dry cleaners are not reflective nor determinative of the true question–the activity generating Taxpayers' income.

We conclude the source of Taxpayers' income is *not* a dry cleaning and laundering business; hence the trial court erred in its determination Taxpayers' income was taxa-

ble at a rate of one–half of one percent (½%). We reverse the judgment of the trial court and remand this case with instruction to correct its judgment consistent with this opinion.

BUCHANAN, C. J., and SULLIVAN, J., concur.

1–3(d) (Burns Code Ed.). Judicial interpretation of IC 6–2–1–3 makes the source of the income the crucial consideration. Whether a corporation engaged in the business of renting towels and uniforms does its own laundering, or contracts out for such services, does not speak to the ultimate question of what activity generates the income.

It is established that courts will accord great weight to longstanding administrative interpretations because they are thought to be indicative of legislative acquiescence. *Baker v. Compton,* (1965) 247 Ind. 39, 211 N.E.2d 162. *Indiana Dept. of Revenue v. Endress & Hauser,* 404 N.E.2d 1173 (Ind.App.1980) tempers this general rule: legislative acquiescence will be

assumed only where the interpretation dates from the time of the legislation or is of a "long standing nature." Circular IT–33 was issued in 1968, *twenty–seven years after the enactment* of IC 6–2–1–3(d) (Burns Code Ed.). While the circular has been in existence for several years, and was promulgated as a tax regulation, Indiana Administrative Code, 45 IAC 1–1–93 in 1978, nothing in the record before us suggests it has been applied previously, which would be reflective of a "long standing nature." *Baker.* Further, interpretations that are wrong, as we suggest this one is, are accorded no weight. *Indiana Dept. of State Revenue v. Sohio Petroleum Co.,* (1976) Ind.App., 352 N.E.2d 95.