BEER DISTRIBUTOR OF INDIANA, INC., and Adolph Coors Company, a Colorado Corporation, Appellants (Intervenors Below),

v.

The STATE of Indiana on the Relation of the Indiana ALCOHOLIC BEVERAGE COMMISSION, Appellee (Plaintiff Below),

and

Eagle Distributing, Inc., an Indiana Corporation; Lafayette Beverage Distributors, Inc., an Indiana Corporation; and Frank's Distributing, Inc., a Maryland Corporation, Appellees (Defendants Below).

No. 1–481A153.

Court of Appeals of Indiana, First District.

Feb. 22, 1982.

Rehearing Denied March 30, 1982.

Earle D. Bellamy, II, Bradley, Campbell & Carney, Golden, Colo., George B. Davis, Davis & Davis, Greenfield, William M. Evans, Bose, McKinney & Evans, Indianapolis, for appellants.

Paul G. Roland, Walter F. Lockhart, Indianapolis, for appellees.

ROBERTSON, Judge.

Beer Distributors of Indiana (BDI) and the Adolph Coors Company (Coors) appeal the trial court's decision in an action for declaratory judgment which found Eagle Distributing, Inc. (Eagle) and Lafayette Beverage Distributors, Inc. (Lafayette) are entitled to import beer manufactured by Coors from Frank's Distributing, Inc. (Frank's). The action was brought at the request of the Indiana Alcoholic Beverage Commission (ABC).

We affirm.

This case involves the determination of whether two Indiana beer wholesalers are entitled to import beer brewed in the United States, for resale into Indiana. Eagle and Lafayette are Indiana corporations and both companies hold beer wholesalers permits to operate as such within this state. Eagle and Lafayette receive Coors beer from Frank's which is a Maryland corporation. Frank's has filed a Registration Statement for All Out of State Brewers and Importers and a surety bond with the ABC. Coors has not authorized the sale or distribution of its product by Frank's, Eagle or Lafayette.

Eagle and Lafayette informed the ABC of their intent to import and sell Coors beer

on November 20, 1979. The ABC voted on this request. The vote count resulted in a two-two split among the commissioners, thus, the ABC took no action to halt the sale of Coors beer. Prior to this time, Coors beer was not sold in Indiana. The ABC filed its complaint seeking a declaratory judgment on December 17, 1979. BDI, a trade association representing beer wholesalers in Indiana, and Coors petitioned to intervene. Both motions to intervene were granted. The trial court proceeded to determine the legality of sales by out-of-state wholesalers and the interpretation of Ind. Code 7.1 *et seq.*

The trial court found that Eagle and Lafayette could continue importing Coors beer from Frank's. The decision was based on a determination of Ind.Code 7.1–3–2–4. The trial court held that this section allows persons other than brewers or their authorized agents to sell beer to Indiana wholesalers. In reaching this decision, the trial court found that the opinion of the ABC contained in its Bulletin of November 24, 1976 (hereinafter cited as Bulletin No. 11–24–76) was void.

On appeal,[1] BDI and Coors allege that the trial court erred by misinterpreting I.C. 7.1–3–2–4 by disregarding the long-standing administrative interpretations, holding that persons other than brewers or their authorized agents can sell domestically brewed beer to Indiana wholesalers, and that the findings of fact and conclusions of law are erroneous. For purposes of this appeal, we shall consolidate the first two issues.

BDI and Coors allege that the trial court misinterpreted I.C. 7.1–3–2–4 and failed to give proper weight to Bulletin No. 11–24–76. BDI and Coors also argue that the doctrine of legislative acquiescence should be applied, and that the overall context of I.C. 7.1 *et seq.* only authorizes brewers or importers to sell beer to Indiana wholesalers. It is also alleged that the unauthorized distribution or sale of beer could harm the goodwill of the brewer.

It is necessary to examine I.C. 7.1–3–2–4 and I.C. 7.1–1–3–31 in order to decide this case. I.C. 7.1–3–2–4 provides:

A brewer or other person located outside this state who is desirous of selling beer to an Indiana permittee for importation into, and resale in Indiana, in order to qualify under this title, shall file with the commission a surety bond in a penal sum equal to the average monthly excise tax liability for the previous year, payable to the state of Indiana and conditioned on the principal's faithful performance and discharge of its agreement with the commission as provided in IC 1971, 7.1–3–2–5. The bond and agreement, unless suspended or revoked, shall be renewable annually.

A person is defined in I.C. 7.1–1–3–31 as follows:

The term "person" means a natural individual, a firm, a corporation, an incorporated or unincorporated association, or other legal entity, and whether acting by themselves or by a servant, agent, or employee.

BDI and Coors look to Bulletin No. 11–24–76 to support their appeal. This document was actually a letter from the ABC to brewers, importers, and wholesalers and in relevant part provides:

Please be advised that the Commission met at its regular meeting on November 16, 1976, and now takes the position that; with regard to domestic beers, only a brewer will be allowed to import such beer. Basically, there are four (4) reasons for this policy and they are as follows:

1) All "importers" are now importing *foreign* beers into the State of Indiana. This is the only practical method by which the Commission can collect taxes due on such foreign beers. Thus, the "importer" acts as the foreign brewery's agent, since it would be rather difficult to collect said taxes directly from the brewery.

---

1. It must be noted that the appellants have failed to comply with Ind.Rules of Procedure, Appellate Rule 8.3(A)(4) by not including a verbatim statement of the judgment. In our discretion, we shall grant review of this case.

2) The law provides that only a brewer is liable for taxes due on beer sold within the State of Indiana.

3) There may arise a problem of collecting taxes from an "importer" of domestic beers if he had the inclination not to pay such taxes.

4) In the past four (4) years, only one (1) person other than a brewer has been allowed to import a domestic beer into the State of Indiana.

Additionally, each importer who imports foreign beer into Indiana shall be required to place on file with the Commission written documentation that he is the agent for the foreign brewery desiring to import beer into the United States.

The trial court found Bulletin No. 11–24–76 was void because it was never properly promulgated as a rule or regulation after the passage of Ind.Code 4–22–2–2. This section, in relevant part, provides:

(a) All rules, regulations and other documents containing a statement of policy, other than official opinions of the attorney general, which the issuing agency intends to have the effect or force of law but which are not promulgated, aproved and filed as rules in conformity with the provisions of this chapter, shall be invalid, void and of no force or effect after the first day of January, 1978. Official explanatory opinions of the state board of accounts based on official opinions of the attorney general are to be considered the official explanation of current law and current rules and regulations after publication in the Indiana Register until changed by legislative enactment of the Indiana general assembly or judicial decision of the Supreme Court of Indiana.

■ BDI and Coors contends the trial court erred in finding Bulletin No. 11–24–76 void because it is an administrative interpretation. An agency's interpretation of its statute is entitled to great weight. *Terre Haute Savings Bank v. Ind. State Bank* (1978) Ind.App., 380 N.E.2d 1288. If Bulletin No. 11–24–76 was intended to have the force and effect of law, then I.C. 4–22–2–2 requires the trial court to find it void and invalid.

The trial court did not err in finding Bulletin No. 11–24–76 void because it appears from the face of the document that it is intended to have a legal effect. Bulletin No. 11–24–76 attempts to limit the importation of domestic beer to brewers and their authorized agents. It also requires importers of foreign beers to file documentation with the ABC that they are agents of foreign brewers. The document makes the distinction between foreign and domestic brewers as well as a requirement for authorization of the brewers. In issuing this document, the ABC has established conditions not found with the language of the Title 7.1. Such conditions needed to be properly promulgated and approved, if they are to have the force and effect of law.

■ Even if Bulletin No. 11–24–76 was not intended to have the force and effect of law, the trial court did not err in holding it void. Long standing administrative interpretations which are incorrect are entitled to no weight upon review. *Ind. Dep't of State Revenue v. Endress & Hauser* (1980) Ind.App., 404 N.E.2d 1173. Frank's applied for and received an out-of-state brewer's permit pursuant to I.C. 7.1–3–2–4. This section allows "a brewer or *other person* located outside this state who is desirous of selling beer to an Indiana permittee" to file a surety bond with the ABC. The definition of "person" contained in I.C. 7.1–1–3–31 includes a corporation. There is no dispute that Frank's is a corporation and therefore is a person within the meaning of Title 7.1. As a person, Frank's was entitled to apply for and receive out-of-state brewer's permit.

■ BDI and Coors argue that the language "person" contained in I.C. 7.1–3–2–4 can only be interpreted to mean an authorized agent of the brewer. Other provisions of Title 7.1 support the trial court's interpretation. The language in Ind.Code 7.1–3–2–7 refers to the "applicant" and Ind. Code 7.1–3–2–7 refers to the "holder of a brewer's permit." The language of I.C. 7.1–3–2–4 is repeated in Ind.Code 7.1–5–8–9 which provides:

It is unlawful for a permittee to purchase, receive, or import beer from a *brewer or other person* located outside this state unless the bond and agreement required by the provisions of IC 1971, 7.1–3–2 [7.1–3–2–1—7.1–3–2–8], have been accepted by the commission and are currently effective. (Emphasis added)

The language in these sections clearly demonstrate an intent to allow individuals or entities located outside of state which do not brew beer to apply for and receive out-of-state brewer's permits. We see no authority in the statute to require the adoption of the words "authorized person" into I.C. 7.1–3–2–4. To accept the interpretation forwarded by BDI and Coors would require this court to adopt an interpretation contrary to clear and unambiguous language of the statute.

BDI and Coors allege the trial court erred in not applying the doctrine of legislative acquiescence. This doctrine holds that a long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change in the statute, raises a strong presumption that the legislative has acquiesced to the administrative interpretation. *Baker v. Compton* (1965) 247 Ind. 39, 211 N.E.2d 162. BDI and Coors contend that the Legislature has acquiesced to the interpretation contained in Bulletin No. 11–24–76.

 Legislative acquiescence is a useful tool of statutory construction, but it is not a sufficient independent basis for affirming a judgment. *Ind. Dept. of State Revenue v. Mercantile Mortgage* (1980) Ind. App., 412 N.E.2d 1252. Likewise, it cannot be contended that it is a sufficient basis to reverse a judgment. Legislative acquiescence will be assumed only where the interpretation dates from the time of the legislation or is of a "long standing nature." *Ind. Dept. of State Revenue v. Commercial Towel* (1980) Ind.App., 409 N.E.2d 1121. Furthermore, long standing administrative interpretations which are incorrect, are entitled to no weight. *Ind. Dept. of State Revenue v. Endress & Hauser, supra.*

 In applying the doctrine of legislative acquiescence to Bulletin No. 11–24–76, the doctrine fails for several reasons. First, as previously discussed, Bulletin No. 11–24–76 contradicts the provisions of I.C. 7.1–3–2–4 and I.C. 7.1–1–3–31. It is entitled to no weight. *See Ind. Dept. of State Revenue v. Endress & Hauser, supra.* Bulletin No. 11–24–76 was not contemporaneous with the passage of I.C. 7.1–3–2–4 because it was not issued for more than three years after the passage of that section. The evidence also showed that the ABC had previously allowed a firm to import domestic beer.[2] The ABC split its vote on Eagle's and Lafayette's notification to import beer two years after issuing Bulletin No. 11–24–76. This evidence demonstrates that the ABC has not consistently followed this position, and thus, the document fails to constitute a long standing administrative interpretation.

 BDI and Coors allege that the context of Title 7.1 in its entirety does not support the determinations made by the trial court. They argue that the trial court's interpretation that Frank's is a domestic importer is a legal fiction. BDI and Coors characterize Frank's as a "middleman", a definition not contained in Title 7.1, and therefore, it should be prohibited from operating within this state. Coors also alleges that the unauthorized sale and distribution of its beer could harm its goodwill.

BDI and Coors claim that Frank's is neither a brewer nor an importer because it does not brew beer or import foreign beer into Indiana. They characterized Frank's as a "middleman" and argue that Title 7.1 is silent in its regulation of middlemen. Therefore, they continue, Frank's is operating without statutory authority which must be halted. It is conceded that the terms "brewer" or "importers" are not defined within Title 7.1. BDI and Coors allege that the definition of "brewer" can be found in Ind.Code 7.1–3–2–1 which provides:

---

2. The firm was authorized by the brewer.

The commission may issue a brewer's permit to a person who desires to commercially manufacture beer.

BDI and Coors fail to examine the full scope of this chapter of Title 7.1. The eligibility requirements for a brewer's permit are contained in Ind.Code 7.1–3–2–2 which provides:

The commission may issue a brewer's permit only to an individual, or to a partnership, all of the partners of which are bona fide residents of this state, or to a corporation organized and existing under the laws of this state and having authority under its character to manufacture or sell beer.

This section clearly establishes a residency requirement for partnerships and corporations. The provisions of I.C. 7.1–3–2–1 and 7.1–3–2–2 are limited to those entities that brew beer within Indiana and are not relevant. The qualifications for out-of-state applicants are contained in I.C. 7.1–3–2–4. Frank's, as previously discussed, has met those qualifications.

BDI and Coors point to various provisions concerning the maintenance of records and payment of excise taxes to argue that the intent of Title 7.1 does not permit "middlemen" to operate. They correctly assert that the tax statutes distinguish in-state brewers from out-of-state brewers. We believe that the different treatment afforded in-state brewers is an attempt to encourage the brewing industry and commerce within our state. We do not agree that Frank's is a "middleman" and acting without statutory authority. If Frank's has to be characterized as a particular type of organization, we contend that it is either an out-of-state brewer because it operates pursuant to its permit or a domestic importer. Nor can we conclude that Frank's is operating without statutory authority, because, as previously discussed, it has satisfied the requirements of I.C. 7.1–3–2–4.

■ BDI and Coors note that Ind.Code 7.1–4–2–2 makes the brewer liable for the excise tax on beer sold within the state. They argue that if the Legislature had intended for middlemen to operate, the tax

statutes would provide for the payment of tax by middlemen. An examination of the pertinent regulations disclose that the payment of the excise taxes by the brewer only applies to beer "manufactured and sold within the state." Burns Adm. Rules and Regulations (7.1–4–2–2)–1. The tax liability for those entities operating pursuant to an out-of-state brewer's permit is covered by Ind.Code 7.1–3–2–5, which in relevant part, provides:

There shall accompany the bond required by I.C. 1971, 7.1–3–2–4, an agreement by the applicant, to:

(a) Pay to the state the taxes and fees levied by the state on beer shipped into Indiana.

This section clearly allows an applicant for an out-of-state brewer's permit to pay the excise tax.

■ BDI and Coors assert that Frank's is not paying the excise tax on the beer and argue that this contradicts the statute. The trial court held that although the brewer is liable for the excise tax, any person may pay the excise tax due. One of the purposes of Title 7.1 is to raise revenue for the state. Ind.Code 7.1–1–1–1(c). In order to protect that interest, the ABC requires out-of-state brewer's permittee to file a bond. The state's interest is further protected by I.C. 7.1–5–8–9. We fail to see how the state's interests are endangered when a beer wholesaler like Eagle or Lafayette agrees to pay the excise tax for the brewer. The tax is imposed on the sale of the beer itself. See I.C. 7.1–4–2–2. If the tax is not paid, the ABC has recourse against the bond and may take action against the holder of the permit.

■ Coors alleges that the unauthorized sale and distribution of its product will harm its reputation. Coors attempted to offer evidence concerning this allegation but appellees' counsel objected. The trial court sustained the objection and Coors made an offer to prove. Coors has not challenged the trial court's ruling on this in its motion to correct errors. Errors raised for the first time on appeal are deemed

waived. *Winkler, Admx. v. Royal Ins. Co. et. al.* (1975) 167 Ind.App. 16, 337 N.E.2d 499. Furthermore, this evidence was outside the scope of the complaint for declaratory judgment filed by the ABC. The remedy of declaratory relief must be judged in light of whether the issue at hand is more properly resolved in another forum. *Madden v. Houck* (1980) Ind.App., 403 N.E.2d 1133. If Eagle, Lafayette, or Frank's has damaged Coors's goodwill, Coors should seek relief against those corporations.

The final issue raised by BDI and Coors is whether the trial court erred in determining that the three-tiered distribution system is not required by Title 7.1 or by the nature of the product. The three-tiered distribution system consists of the brewer-manufacturer, a wholesaler-distributor, and a retailer. BDI and Coors argue that an examination of the Alcoholic Beverage Act, as a whole, requires such a system. Evidence was submitted that brewers and wholesalers commonly operate pursuant to franchise or distribution agreements. BDI and Coors support their argument by noting that the ABC has promulgated regulations dealing with brand registration, sale of beer directly to retailers by in-state brewers, and that Frank's had failed to comply with some monthly reporting requirements. BDI and Coors allege that all arguments show that Frank's is not within the parameters of the Title 7.1 and therefore, must be prohibited from operating.

The argument fails for several reasons. First, BDI and Coors did not challenge the trial court's finding that there is no valid distinction between domestic and foreign beer in terms of how the beer is distributed. Any error in regard to this finding is waived. *State Farm Mutual v. Price*, (1979) Ind.App., 396 N.E.2d 134. This finding undercuts the argument of BDI and Coors. Foreign beer has been imported into our state for many years, yet it would not fit into the three-tiered system because it is not shipped into Indiana by the brewer. Although franchise or distribution agreements may be permitted by the Act, BDI

and Coors concede that these agreements are not required. Frank's, as previously discussed, is authorized to operate pursuant to I.C. 7.1–3–2–4, and is an out-of-state brewer by reason of holding said permit. We remain unpersuaded that the trial court erred in concluding that the three-tiered distribution system is not required by law or by the nature of the industry because I.C. 7.1–3–2–4 allows "other persons" to operate and there is no distinction in the methods of distribution between foreign and domestic beer.

The judgment is affirmed.

RATLIFF, P. J., and NEAL, J., concur.