

**FILED**

Mar 15 2016, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

James Dimos
Maggie L. Smith
Jennifer A. Rulon
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Damon R. Leichty
Georgina D. Jenkins
Barnes & Thornburg LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ESPN, Inc. and Paula Lavigne,

*Appellants-Plaintiffs,*

v.

University of Notre Dame
Security Police Department, a
Department of the University of
Notre Dame du Lac,

*Appellee-Defendant.*

March 15, 2016

Court of Appeals Case No.
71A05-1505-MI-381

Appeal from the St. Joseph
Superior Court

The Honorable Steven L.
Hostetler, Judge

Trial Court Cause No.
71D07-1501-MI-17

**Pyle, Judge.**

## Statement of the Case

[1]     This appeal concerns the issue of whether the campus police department of a private university is subject to the Indiana Access to Public Records Act ("APRA"). Appellants/Plaintiffs, ESPN, Inc. ("ESPN, Inc.") and Paula

Lavigne ("Lavigne") (collectively, "ESPN") filed a complaint against Appellee/Defendant, University of Notre Dame Security Police Department ("the Police Department"), claiming that the Police Department qualified as a public agency under APRA and had violated APRA by refusing to provide ESPN with access to certain public records that ESPN had requested. After both parties filed cross-motions for judgment on the pleadings under Trial Rule 12(C), the trial court granted judgment in favor of the Police Department and denied ESPN's cross-motion, determining that the Police Department was not subject to APRA.

[2] On appeal, ESPN argues that the trial court erred in granting judgment in favor of the Police Department because (1) the Police Department qualified as a "public agency" under APRA's definition of the term and was, therefore, required to provide access to the public records ESPN had requested; and (2) the doctrine of legislative acquiescence did not bar ESPN's claim. Because we conclude that: (1) the Police Department is a "law enforcement agency" as defined in APRA, and therefore qualifies as a public agency subject to the act; and (2) the doctrine of legislative acquiescence did not bar ESPN's claim, we reverse the trial court's judgment on the pleadings. We remand with instructions for the trial court to enter judgment in favor of ESPN. However, we do not, as ESPN requests, find that the trial court must order the Police Department to produce the public documents ESPN sought. We instruct the trial court to determine which of the records the Police Department was

required to produce under APRA and then order the Police Department to produce only those records.

[3] We reverse and remand with instructions.

## Issue

Whether the trial court erred in granting the Police Department's motion for judgment on the pleadings and denying ESPN's cross-motion.

## Facts[1]

[4] This appeal concerns the issue of whether a private university's campus police department qualifies as a "public agency" for purposes of APRA. Notre Dame is a private university that has been given the authority under INDIANA CODE § 21-17-5-2 to appoint a police force and administer a law enforcement program. It exercised this statutory authority and created the Police Department, which it describes as follows on its website:

> [The Police Department] . . . is fully authorized as a police agency by the State of Indiana. The department employs both sworn police officers and non-sworn campus security officers who patrol campus and respond to emergencies . . . [.] Notre Dame police officers complete state mandated training requirements established for law enforcement officers and have the same legal authority as any other police officer in Indiana.

---

[1] We held an oral argument in this case on February 24, 2016 in the Indiana Supreme Court Courtroom. We thank counsel for their preparation and presentation.

> Notre Dame Security Police staff frequently work with city,
> county, state and federal law enforcement authorities[.]

(App. 100).[2]

On September 19, 2014, Lavigne, an investigative journalist with ESPN, Inc., requested public incident reports from the Police Department pursuant to APRA. Specifically, she requested incident reports concerning 275 student-athletes, including information regarding "whether they had been named as [] victim[s], suspect[s], witness[es], or reporting part[ies]" in incidents.[3] (App. 71). The Police Department denied the request, claiming that it was not a public law enforcement agency and, therefore, was not subject to APRA. In response, ESPN filed a formal complaint with Indiana's Public Access Counselor ("PAC"), alleging that the Police Department had violated APRA by refusing to provide the incident reports Lavigne had requested.

On October 31, 2014, the PAC issued an advisory opinion responding to ESPN's complaint. In its advisory opinion, the PAC noted that three prior PAC advisory opinions had all concluded that a private university's police force was not a "public institution[] accountable to any other political subdivision or

---

[2] ESPN included this quote from the Police Department's website in its legal memorandum in support of its cross-motion for judgment on the pleadings but did not attach the quote as an exhibit. Nevertheless, the Police Department does not dispute that it is an accurate representation of the department's website's description.

[3] Neither party included the public record requests in an appendix on appeal. We have drawn the information regarding the public record requests from the Police Department's memorandum of law in support of its motion for judgment on the pleadings.

body politic" and, therefore, did not qualify as a public agency subject to APRA. (App. 23). However, with respect to the request before it, the PAC found that the Police Department was "clearly operating under the color of the law, enforcing Indiana['s] criminal code and not mere policy or disciplinary procedures." (App. 24). As a result, the counselor concluded that the Police Department was a state actor and should be subject to APRA as a public agency. The counselor recognized that this determination "m[ight]" be inconsistent with the previous PACs' opinions but concluded that the decision was nevertheless consistent with the "spirit of" APRA. (App. 25). In recognition of the fact that the Police Department could have been relying on the previous PAC opinions, though, the PAC declined to issue a conclusive determination that the department had violated APRA. Instead, the counselor put the Police Department "on notice" that it would be considered a public law enforcement agency under APRA for purposes of future public access requests. (App. 25).

[7] On November 4, 2014, ESPN submitted a second public records request to the Police Department seeking incident reports for specified student-athletes. The Police Department denied the request on November 11, 2014. Again, it claimed that it was not a public law enforcement agency for purposes of APRA and that it did not have documents responsive to ESPN's request.

[8] Thereafter, on November 20, 2014, ESPN submitted a third "more specific" public records request to the Police Department seeking the department's daily

log.[4] (App. 34). The Police Department again denied the request, stating that it was not a public agency subject to APRA. As a result, on December 8, 2014, ESPN filed a second complaint with the PAC, alleging that the department had violated APRA by refusing to tender the requested records.

[9] On January 5, 2015, the PAC issued a second advisory opinion. In this opinion, the counselor stated that, because the Police Department had been on notice since the first advisory opinion that the counselor considered it a public agency—specifically a law enforcement agency—it had been required to comply with APRA when ESPN tendered its requests in November. However, the counselor also noted that the Police Department had not necessarily been required to produce all of ESPN's requested documents because they likely included information that could be considered investigatory records that a law enforcement agency would have discretion to withhold under APRA. As for the daily logs that ESPN had requested, the counselor wrote that the Police Department could substitute redacted daily incident reports, since it had not been keeping daily logs as required by APRA. In conclusion, the PAC held that if the Police Department "had documentation regarding any suspected crimes, accidents or complaints involving the individuals named in [ESPN's] request, [it] ha[d] violated [] [APRA]." (App. 36).

---

[4] ESPN did not include this third public records request in its Appendix, so it is not clear whether this request was different from its November 4 request.

[10] Subsequently, ESPN filed a complaint with the trial court on January 15, 2015, asking the court to order the Police Department to disclose the documents it had requested. The Police Department answered the complaint and moved for judgment on the pleadings under Trial Rule 12(C), contending that ESPN could not succeed in its complaint under APRA because the Police Department was not a public law enforcement agency subject to APRA. The department also argued that ESPN's complaint should be barred by the doctrine of legislative acquiescence because the legislature had not amended APRA to include private university police departments after three previous PACs had concluded that they were not subject to APRA.

[11] ESPN responded and filed a cross-motion for judgment on the pleadings. It argued that the Police Department was subject to APRA because the department was a state actor exercising an executive function of the State of Indiana and was, therefore, a "public agency" within APRA's definition of the term. ESPN also argued that the Police Department met another component of APRA's definition of "public agency" because it was a law enforcement agency.

[12] The trial court held a hearing on the cross-motions on April 1, 2015. At the conclusion of the hearing, the trial court took the matter under advisement. Then, on April 20, 2015, it granted the Police Department's motion and entered judgment on the pleadings in the department's favor. As an initial matter, the trial court noted in its order that Notre Dame was not authorized by statute to

establish "separate and distinct legal entities to exercise police powers." (App. 8). Accordingly, the trial court found the following:

> In fact, the statute does not use the term "campus police department," "campus police force," or any similar term. All it does is authorize the colleges and universities themselves to appoint police officers with certain enumerated powers. If Notre Dame is a "public agency" because it appoints police officers, it is a public agency, period. Thus, the question raised by ESPN's complaint is really whether the University of Notre Dame, the entire University of Notre Dame, is now required to produce all of its records (such as academic, business and financial records) simply because it appoints campus police officers.

(App. 8).

[13]    The trial court then turned to precedent concerning "state actors" and found that, even if Notre Dame qualified as a "state actor" for constitutional law purposes, such a finding would not necessitate that the school qualify as a "public agency" under APRA. Instead, the court concluded that Notre Dame was not a public agency because:

> It is difficult to fathom that the Indiana Legislature, without directly saying so, would intend the University of Notre Dame, Taylor University, Valparaiso University (and on and on) to have to produce pursuant to APRA all of their records concerning any matter whatsoever to anyone who asks, simply because those private institutions availed themselves of the Legislature's invitation to appoint campus police officers.

(App. 12). The court was also troubled by the fact that APRA did not contain any language that would limit public access to university records to only those

concerning police powers. Ultimately, it recognized that ESPN was not requesting Notre Dame's general records, but it noted that granting ESPN's complaint could be a "slippery slope" due to "the expansive effect of ESPN's interpretation of APRA." (App. 12). As a result, the trial court concluded that the university—and therefore the Police Department—could not be a "public agency" under APRA.

[14] In addition, the trial court made three further points in its order granting the Police Department's motion for judgment on the pleadings and denying ESPN's cross-motion. First, it found that the Police Department's legislative acquiescence argument was "well taken." (App. 13). It noted that there had been three previous PAC opinions finding that private university police departments were not subject to APRA, and yet the legislature had not amended the statute. Second, the trial court found that the legislature had delegated its executive powers to the governing boards of private universities, not the police departments of the universities. Thus, the trial court concluded that the campus police departments were exercising powers delegated "by" the state, not powers "of" the state. (App. 11) (underlining omitted). Third, the trial court interpreted the definition of "law enforcement agency" in APRA and concluded that the Police Department did not qualify as a law enforcement agency per the definition because "Notre Dame [was] clearly not 'an agency or department of any level of government'" as the language of the statute required. (App. 10) (quoting I.C. § 5-14-3-2(n)(6).

ESPN now appeals the trial court's order granting judgment on the pleadings in favor of the Police Department. The South Bend Tribune, Hoosier State Press Association Foundation, and the State of Indiana have filed *Amicus Curiae* briefs substantially aligned with ESPN.

## Discussion

The issue on appeal is whether the trial court erred when it determined that the Police Department was not subject to the public records access requirements of APRA. In Indiana, the general rule is that the information submitted to state governmental entities can be accessed by the public. *See Travelers Casualty and Surety Co. v. U.S. Filter Corp.*, 895 N.E.2d 114, 115 (Ind. 2008). To promote this accessibility, the Indiana General Assembly enacted APRA, whose express purpose is to fulfill the public policy of the state that "all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." I.C. § 5-14-3-1. Towards that end, APRA provides that "[a]ny person may inspect and copy the public records of any *public agency* during the regular business hours of the agency," subject to certain exceptions. I.C. § 5-14-3-3 (emphasis added).

On appeal, ESPN argues that the trial court erred in granting the Police Department's motion for judgment on the pleadings because the Police Department qualified as a "public agency" subject to APRA under APRA's definition of the term. Based on this argument, ESPN asserts that the Police

Department violated APRA when it refused to produce the records that ESPN had requested. In addition, ESPN also disputes the trial court's conclusion that, regardless of APRA's definition of "public agency," the doctrine of legislative acquiescence barred ESPN's claim.

[18] We review a trial court's ruling on a T.R. 12(C) motion for judgment on the pleadings de novo. *Davis v. Edgewater Sys. for Balanced Living, Inc.*, 42 N.E.3d 524, 526 (Ind. Ct. App. 2015). Such a motion attacks the legal sufficiency of the pleadings. *Midwest Psychological Ctr., Inc. v. Ind. Dep't of Admin.*, 959 N.E.2d 896, 902 (Ind. Ct. App. 2011), *trans. denied.* Accordingly, judgment is proper only when there are no genuine issues of material fact and when the facts shown by the pleadings clearly establish that the non-moving party cannot in any way succeed under the facts and allegations therein. *Id.* During our review, we consider any facts of which we may take judicial notice and accept as true the well-pleaded material facts alleged in the complaint. *Davis*, 42 N.E.3d at 526. Further, we draw all reasonable inferences in favor of the nonmoving party against the movant. *Midwest Psychological Ctr., Inc.*, 959 N.E.2d at 902.

## 1. "Public Agency"

[19] First, ESPN argues that the Police Department qualifies as a public agency under APRA's definition of the term. Our resolution of this issue is dependent, in part, on the nature of the Police Department. Accordingly, we will preliminarily describe the Police Department and its statutorily-granted powers.

Notre Dame established the Police Department pursuant to INDIANA CODE §
21-17-5-2, which provides that "the governing board of an educational
institution" may:

> (1) Appoint police officers for the educational institution for
> which it is responsible.
>
> (2) Prescribe the duties of police officers of the educational
> institution and direct their conduct.
>
> (3) Prescribe distinctive uniforms for the police officers of the
> educational institution or campus.
>
> (4) Designate and operate emergency vehicles.

Under INDIANA CODE § 21-17-5-4(a), the Police Department's police officers
have the following statutorily-granted powers and duties:

> (1) General police powers, including the power to arrest, without
> process, all persons who commit any offense within the view of
> the officer.
>
> (2) The same common law and statutory powers, privileges, and
> immunities as sheriffs and constables. However, the police
> officers are empowered to serve civil process only to the extent
> authorized by the employing governing board.
>
> (3) The duty to enforce and to assist the officials of the
> educational institutions in the enforcement of the rules and
> regulations of the educational institution.
>
> (4) The duty to assist and cooperate with other law enforcement
> agencies and law enforcement officers.

These police powers extend "upon any real property owned or occupied by the educational institution employing the police officer, including the streets passing through and adjacent to the educational institution." I.C. § 21-17-5-5(b). Further, Notre Dame "may extend a police officer's territorial jurisdiction to the entire state, or to any part of the state" if: (1) "the board of trustees adopts a resolution specifically describing the territorial jurisdiction" and (2) notifies the superintendent of the state police department and the sheriff of the county in which the institution is primarily located of the extended jurisdiction. I.C. § 21-17-5-5. In its oral argument, the Police Department's counsel acknowledged that the department's powers are not limited to crimes on Notre Dame's property and that its officers can arrest people off of campus. However, one limit to the Police Department's power is that Notre Dame's "governing board . . . may expressly forbid the officer from exercising any powers otherwise granted to the police officer by law." I.C. § 21-17-5-4(a).

[21] ESPN points to the Police Department's nature and powers as evidence that it qualifies as a "public agency" per three subsections of APRA's definition of the term. APRA defines a "public agency" as, among other definitions:

> (1) Any board, commission, department, division, bureau, committee, agency, office, instrumentality, or authority, by whatever name designated, exercising any part of the executive, administrative, judicial, or legislative power of the state.

> (2) Any . . . other entity, or any office thereof, by whatever name designated, exercising in a limited geographical area the executive, administrative, judicial, or legislative power of the state or a delegated local power.

\* \* \*

(6) Any law enforcement agency . . . .

I.C. § 5-14-3-2(n). Accordingly, EPSN argues that the Police Department fits the definition of "public agency" because it: (1) is a law enforcement agency; (2) exercises the executive powers of the state; and (3) exercises a delegated "traditional" governmental power. We agree with ESPN that the Police Department fits APRA's definition of "law enforcement agency," so we need not address its remaining two arguments.

[22] Turning to ESPN's first argument, we note that APRA includes "[a]ny law enforcement agency" within its definition of "public agency." I.C. § 5-14-3-2(n). It further defines "law enforcement agency" as:

> *any agency or a department of any level of government* that engages in the investigation, apprehension, arrest, or prosecution of alleged criminal offenders, *such as* the state police department, the police or sheriff's department of a political subdivision, prosecuting attorneys, members of the excise police division of the alcohol and tobacco commission, conservation officers of the department of natural resources, gaming agents of the Indiana gaming commission, gaming control officers of the Indiana gaming commission, and the security division of the state lottery commission.

I.C. § 5-14-3-2(n)(6) (emphasis added).

[23] The issue of whether a private university's campus police department may fit within this definition is dependent on statutory interpretation. Statutory

interpretation is a function for the courts, and our goal is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes. *Clark Cnty. Drainage Bd. v. Isgrigg*, 966 N.E.2d 678, 680 (Ind. Ct. App. 2012), *adhering to opinion on reh'g.* "'The first rule of statutory construction is that [w]ords and phrases shall be taken in their plain, or ordinary and usual, sense.'" *Id.* (quoting *State v. Prater*, 922 N.E.2d 746, 749 (Ind. Ct. App. 2009), *trans. denied*) (internal quotations omitted). "'We will examine the statute as a whole[] and avoid excessive reliance on a strict literal meaning or the selective reading of words.'" *A.J. v. Logansport State Hosp.*, 956 N.E.2d 96, 104 (Ind. Ct. App. 2011) (quoting *In re J.J.*, 912 N.E.2d 909, 910 (Ind. Ct. App. 2009)). In addition, where "'statutes address the same subject, they are in pari materia, and we harmonize them if possible.'"[5] *Id.* at 105 (quoting *Saintignon v. State*, 749 N.E.2d 1134, 1137 (Ind. 2001) (citation and quotation marks omitted)).

[24] First, ESPN contends that the Police Department may qualify as a law enforcement agency under APRA's definition of the term because, even though the definition does not explicitly list private university police departments, it includes the statutory phrase "such as," which establishes that the list of entities included in the definition is illustrative, rather than exhaustive. ESPN notes that the department qualifies as a "law enforcement agency" under the

---

[5] "In pari materia" means "[o]n the same subject" or "relating to the same matter." BLACK'S LAW DICTIONARY 911 (10th ed. 2009).

remainder of APRA's definition because it "engages in the investigation, apprehension, arrest, or prosecution of alleged criminal offenders" and its powers mirror the powers of other law enforcement officers. I.C. § 5-14-3-2(n)(6); *see* I.C. § 21-17-5-4(a). In addition, ESPN notes that other statutes include private university police departments and officers within their definitions of law enforcement agencies and officers. *See*, *e.g.*, I.C. § 10-13-8-5 (codifying the "Blue Alert Program"); I.C. § 35-50-2-11 (making it a crime to point or discharge a firearm at a police officer); I.C. § 10-14-2-5(a) (establishing honors for a public safety officer who dies in the line of duty; I.C. § 5-10-10-4.5(b)(1)(a) (establishing certain public employee benefits); I.C. §§ 3-5-2-31.5, 3-11-10-24; and 3-11-8-25.7 (granting police officers special privileges on Election Day).[6] It contends that we should harmonize these statutes by interpreting APRA's definition of "law enforcement agency" to also include private university police departments. *See A.J.*, 956 N.E.2d at 104 (stating that when statutes address the same subject and are, therefore, in pari materia, we should harmonize them if possible).

---

[6] As further examples, the statute governing the training required for law enforcement agencies provides: "Law enforcement officer" means an appointed officer or employee hired by and on the payroll of . . . a public or private postsecondary educational institution whose board of trustees has established a police department under I.C. [§] 21-17-5-2 or I.C. [§] 21-39-4-2 . . . ." I.C. § 5-2-1-2(1). Likewise, statutes concerning a continuing education program for a "[c]ity or town law enforcement agency" and for a "county law enforcement agency" include "postsecondary educational institution police officers appointed under [I.C. §] 21-17-5 or [I.C. §] 21-39-4" within the definitions of "[c]ity or town law enforcement agency" and "county law enforcement agency," respectively. *See* I.C. §§ 5-2-8-1(a) and 5-2-8-2(a).

[25]     We agree with ESPN that the list of entities in APRA's definition is not exhaustive because our supreme court has previously held that the phrase "such as," introducing a list, indicates that the list is illustrative rather than exhaustive. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 714 N.E.2d 135, 139 n. 5 (Ind. 1999) ("The Court's use of "such as" suggests that it did not intend for this to be an exhaustive list."); *Bedree v. DeGroote*, 799 N.E.2d 1167, 1177 (Ind. Ct. App. 2003) ("the 'such as' language indicates the list is non-exhaustive.") (quoting *Hicks v. State*, 690 N.E.2d 215 (Ind. 1997)). Therefore, since "such as" precedes the list in the definition of "law enforcement agency," the definition may also include entities such as the Police Department that it does not explicitly list.

[26]     However, the Police Department contends that regardless of whether the list is exhaustive, it does not include non-governmental agencies. Specifically, the department interprets the phrase "any agency or a department of any level of government" so that "any level of government" modifies both "any agency" and "a department of." I.C. § 5-14-3-2(n)(6). Under such an interpretation, the agencies and departments included in the definition must be governmental in nature since "of any level of government" modifies both types of entities. The Police Department bolsters its argument by noting that each time the legislature has added a listed entity to the definition, the entity has been governmental in nature. *See, e.g.*, P.L. 1-2006 (adding "gaming agents of the Indiana Gaming Commission" to the definition of "law enforcement agency"); P.L. 227-2007

(adding "gaming control officers of the Indiana Gaming Commission" to the definition of "law enforcement agency").

[27] We need not analyze the grammatical structure of the statute as the Police Department suggests, because regardless of whether "any level of government" modifies "agency," the Police Department fits within the definition because it was acting as a governmental entity by exercising a governmental function. In *Evans v. Newton*, 382 U.S. 296 (1966), the United States Supreme Court addressed a situation where a private entity exercised a governmental function. It held that:

> where a State delegates an aspect of the elective process to private groups, they become subject to the same restraints as the State. That is to say, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become *agencies or instrumentalities* of the State and subject to its constitutional limitations.

*Id.* at 300 (emphasis added). Several states have held that the same principle applies when a private entity is acting as a "functional equivalent" of a governmental entity. *See, e.g.*, *Conn. Humane Soc'y v. Freedom of Info. Comm'n*, 591 A.2d 395 (Conn. 1991) (using a functional equivalency analysis to determine whether the Connecticut Humane Society had violated Connecticut's public access statute); *News and Sun-Sentinel Co. v. Schwab, Twitty & Hanser Architectural Group, Inc.*, 596 So.2d 1029 (Fla. 1992) (using a functional

equivalency analysis to determine whether a private entity under contract with a public agency was subject to Florida's Public Records Act).[7]

[28] In *Memphis Pub'g Co. v. Cherokee Children & Family Srvs., Inc.*, 87 S.W.3d 67, 76 (Tenn. 2002), *reh'g denied*, the Supreme Court of Tennessee noted that private entities are increasingly performing the duties of public entities, and it expressed the dangers of not requiring public access to the records of such entities. Specifically, it stated:

> Since the 1980s, governmental entities in various parts of the nation have looked increasingly to privatization as a possible solution to perceived problems of inefficiency or expense in the provision of public services. In typical privatization arrangements, the government, through a contract or similar vehicle, delegates to a private entity the responsibility for performing a function formerly performed by the government itself. . . .
>
> Scholars have long debated the merits of privatization policies. Only recently, however, has attention focused upon the ways in which public access to information may be obstructed when governmental functions are transferred to the private sector. As one commentator states, "Privatization may be desirable in itself, but it should not come without . . . leaving public accountability intact. Not only should the public be able to monitor the private company's activities, but the monitoring should be on the same terms as when the public agency was the information vendor." Others note that the government may, intentionally or

---

[7] For a more comprehensive analysis of the states that have adopted a functional equivalency approach, *see* Craig D. Feiser, *Protecting the Public's Right to Know: The Debate over Privatization and Access to Government Information under State Law*, 27 FLA. ST. U. L. REV. 825, 833 (2000).

unintentionally, shield records from the public by shifting them to private entities. Indeed, by maintaining and controlling previously public records, private companies may control public access to such records in ways that are "at odds with the very purpose of public records laws."

*Id.* at 76-77 (internal citations omitted) (quoting Craig D. Feiser, 27 FLA.ST. U. L. REV. at 833 and Matthew Bunker & Charles Davis, *Privatized Government Functions and Freedom of Information: Public Accountability in an Age of Private Governance*, 75 JOURNALISM AND MASS COMM. Q. 464, 464-68 (1998)).

[29]     This Court has similarly noted the danger of restricting access to documents that would be considered public were a private entity not involved. In *Knightstown Banner, LLC v. Town of Knightstown*, 838 N.E.2d 1127, 1130 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*, we considered the issue of whether a settlement agreement drafted by a public agency's private insurance company's attorney could be considered a public record. The Town of Knightstown ("Knightstown") argued that the settlement agreement was not a public record because it was retained by the insurance company's attorney, a private individual, and was never in the town's possession. *Id.* at 1131. We rejected that argument, reasoning that:

> [I]n light of APRA's purpose of openness, the [G]eneral [A]ssembly crafted the definition of public documents in broad terms. To prevent an agency from frustrating this purpose, the [G]eneral [A]ssembly, in [INDIANA CODE § 5-14-3-3(g)], elected to prohibit a public agency from contracting for storage and copying services that would unreasonably impair access to the public. Thus, if a public agency cannot unreasonably impair

access through contractual storage arrangements, accepting Knightstown's argument would amount to a tortured interpretation of APRA whereby private attorneys would be permitted to ensconce government contracts within their firm[s'] file room[s] and completely deny the public access.

As compelling as Knightstown might find its own arguments, we are not persuaded. Knightstown focuses on the argument that the definition of public record does not include documents created by private individuals acting on behalf of a public agency. This distinction is without merit. There is no doubt that although Retained Town Counsel is a private individual, and not itself a public authority under APRA, he created, maintained, and retained custody of the settlement agreement as attorney for Knightstown, which is a public authority. Accordingly, the settlement agreement was created and accepted, and released Knightstown from liability during the course of Retained Town Counsel's representation of the public authority, and was, in effect, the culmination of that representation. If Knightstown's argument is accepted, public scrutiny of most, if not all, settlement agreements involving public authorities would be barred. This result would effectively close the openness mandated by Indiana's public records law.

*Id.* at 1133. Although this case concerns an agency relationship between an attorney and a public entity, it emphasizes the importance of construing APRA in light of the act's purpose of openness.

[30] In sum, as the above authorities demonstrate, there is a danger that the public will be denied access to important public documents when a private agency is exercising a public function if we construe APRA to categorically exclude such agencies. We are required to liberally construe APRA to implement the legislature's policy behind enacting APRA, which is that the "public is entitled

to 'full and complete information regarding the affairs of government.'"
*Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.*, 577
N.E.2d 208, 214 (Ind. 1991) (quoting I.C. § 5-14-3-1). Interpreting "public
agency" so that a public entity could avoid public access requirements by
delegating its public powers and duties to a private entity would, as we stated in
*Knightstown*, ignore this purpose and "effectively close the openness mandated
by Indiana's public records law." *Knightstown*, 838 N.E.2d at 1133.
Accordingly, we interpret the APRA phrase "any agency or a department of
any level of government," and therefore the definition of "law enforcement
agency," to include private educational institutions that choose to appoint
police officers pursuant to INDIANA CODE § 21-17-5 *et. seq.* As a result, we hold
that the Police Department is a "public agency" for purposes of public records
requests under APRA.

[31]     Notably, this interpretation is consistent with rulings of several states that have
also held that a private entity exercising a public function is considered public
for the purpose of public access laws. *See*, *e.g.*, *State ex rel. Schiffbauer v.
Banaszak*, 33 N.E.3d 52, 54-55 (Ohio 2015) ("[W]e have held that a private
corporation may be considered a public office for purposes of public records
when it performs a governmental function."); *Hackworth v. Bd. of Educ. for City of
Atlanta*, 447 S.E.2d 78 (Ga. Ct. App. 1994) (holding that a private company
responsible for transporting children within the Atlanta city school system was
subject to Georgia's Public Records Act because it exercised a government
function), *cert. denied*. It is also consistent with our well-settled law that a

private entity exercising a public function is considered a state actor for purposes of constitutional law. *See Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003) (finding that, because the state had conferred "general police powers" on Butler University Police officers, those officers were state actors subject to the Fourth Amendment restrictions on searches and seizures). While APRA is not constitutional in nature, the same premise applies. *See Newton*, 382 U.S. at 300 ("when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State[.]").

[32] Here, it is clear that the Police Department is exercising a public function. Police power is a sovereign power. *Tucker v. State*, 35 N.E.2d 270, 299 (Ind. 1941) ("The police power is a sovereign power. Authority to enact laws is in the Legislature, but the power to enforce and execute the laws enacted under the police power is in the executive.") Even though the Police Department is not a governmental entity, the State has delegated its officers these "[g]eneral police powers," including "the power to arrest, without process, all persons who commit any offense within the view of the officer[s]." I.C. § 21-17-5-4(a). Under INDIANA CODE § 21-17-5-4(a), the Police Department has "[t]he same common law and statutory powers, privileges, and immunities as sheriffs and constables," except the power to serve civil process. In addition, Notre Dame's board of trustees was given the authority to "extend a [campus] police officer's territorial jurisdiction to the entire state, or to any part of the state[.]" I.C. § 21-17-5-5. This means that campus police officers may even have the same

jurisdiction as governmental law enforcement officers. In light of these factors, it is clear that the Police Department exercises governmental, public functions even though it was established by a private entity. It would not be appropriate for the Police Department, having availed itself of its statutory right to exercise these public functions, to then be able to circumvent public records requirements to which all other entities exercising these same functions are required to adhere.[8]

[33] In addition, we must note that our conclusion does not mean that Notre Dame, as a whole, is subject to APRA as a "public agency" and must produce its general university records if requested. The trial court concluded that Notre Dame would be subject to APRA if the Police Department qualified as a "public agency," because it viewed the department as an inseparable division of the university. Its basis for this interpretation was the fact that the Indiana Code does not authorize a university to create a police department that is a separate and distinct legal entity.

---

[8] Because we conclude that the Police Department is a law enforcement agency as a result of its exercise of a governmental function, we also conclude that it is not relevant that the department is controlled and financed in many relevant respects by Notre Dame's Board of Trustees.

The Police Department also argues that it cannot be a "law enforcement agency" because numerous private entities are statutorily authorized to engage in investigation, apprehension, and arrest of criminal offenders in Indiana, and it would be "absurd" to consider all of those entities law enforcement agencies. (Police Department's Br. 29) (arguing that "ESPN's new argument would extend APRA to. . . private hospitals, railroad companies, railroad conductors, retail establishments, banks, bail bond agencies, and private investigation agencies"). However, the Police Department has not provided any legal authority to support a conclusion that the legislature did not intend these entities to be included in the definition of "law enforcement agency" if they, like the Police Department, also exercise public functions.

[34] However, we find the Ohio Supreme Court's opinion in *State ex rel. Schiffbauer* persuasive on this issue. There, the Supreme Court rejected the argument that a university can be considered a public agency merely because its police department qualifies as such. It noted that a private entity is only "considered a public office for purposes of public records when it performs a governmental function." *State ex rel. Schiffbauer*, 33 N.E.3d at 55. In contrast, providing educational services is not a "uniquely governmental service, given that such instruction does not fall under a typical 'police power' type of function and that other non-governmental organizations may provide similar instruction." *Lane ex rel. Sharp v. Frankfort Cnty. Sch. Bldg. Trades Corp.*, 747 N.E.2d 1172, 1176 (Ind. Ct. App. 2001).

[35] Correspondingly, we note that whereas the Police Department qualifies as a public agency under APRA because it is a law enforcement agency, the remainder of Notre Dame clearly does not qualify as a law enforcement agency. In light of these factors, we conclude that it is possible for a subdivision of a private entity to be considered a public agency under APRA for purposes of public disclosure relating to its exercise of a public function without subjecting the entire private entity to APRA.

## 2. Legislative Acquiescence

[36] Next, ESPN challenges the trial court's conclusion that, regardless of whether the Police Department qualifies as a "public agency" under APRA, ESPN's claim should be barred by the doctrine of legislative acquiescence. The court noted that three previous PAC advisory opinions over the course of a decade

had held that private university police departments were not public agencies. It concluded that the legislature had acquiesced in that interpretation because it had chosen not to amend APRA over that time period. Thus, it found that the doctrine of legislative acquiescence should apply.

[37] The doctrine of legislative acquiescence is an estoppel doctrine designed to protect those who rely on a long-standing administrative interpretation. *Citizens Action Coal. of Ind., Inc. v. N. Ind. Pub. Serv. Co.*, 485 N.E.2d 610, 616 (Ind. 1985), *cert. denied*. It provides that "a long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change in the statute, raises a strong presumption that the [legislature] has acquiesced to the administrative interpretation." *Beer Distrib. of Ind., Inc. v. State ex rel. Alcoholic Beverage Comm'n*, 431 N.E.2d 836, 840 (Ind. Ct. App. 1982). We will assume that the legislature has acquiesced to an interpretation where the interpretation dates from the time of the legislation or is of a "long[-]standing nature." *Id.* However, although legislative acquiescence is a useful tool of statutory construction, it is not a sufficient independent basis for affirming or reversing a judgment. *Id.* In addition, long-standing administrative interpretations that are incorrect are not entitled to *any* weight. *Id.*

[38] The three PAC opinions the Police Department cites were issued in 2003, 2009, and 2011. In 2003, the then-PAC, Michael Hurst ("Hurst"), issued an advisory opinion stating that the Taylor University Office of Campus Safety was not subject to APRA because it was a "subdivision or office of a private institution," not a public agency. (App. 55). Hurst also concluded that the

Office of Campus Safety was not exercising the types of executive functions that fell within the definition of "public agency." Then, in 2009, the then-PAC, Heather Willis Neal, adopted Hurst's 2003 analysis verbatim and issued an advisory opinion finding that the Valparaiso University Police Department was not a public agency under APRA. Finally, in 2011, the then-PAC, Andrew Kossack ("Kossack"), issued an advisory opinion stating that the Notre Dame Police Department—the Police Department here—was not a public agency. Kossack adopted the reasoning of the 2003 advisory opinion, but he additionally concluded that if the Office of the PAC were to consider the Police Department a public agency, then it would have to consider Notre Dame as a whole a public agency because the State had delegated the executive powers to the university's governing body, not the university's police department. None of the parties to these advisory opinions challenged the PACs' conclusions in court.

[39]    ESPN argues that we should not rely on the doctrine of legislative acquiescence because the cases that have addressed the doctrine have concerned agencies responsible for issuing final, binding decisions. In contrast to such agencies, the Office of the PAC is, according to ESPN, "primarily educational[,] and the Counselor's opinions are non-binding and advisory only." (ESPN's Br. 36). As a result, ESPN contends that "there is no need for the legislature to do anything following an incorrect opinion by the Counselor given that the opinion is advisory and non-binding" and, thus, the legislature's silence should not be considered acquiescence. (ESPN's Br. 38). Alternatively, ESPN argues that

the doctrine of legislative acquiescence should not apply because the former PAC opinions were incorrect.

[40] Contrary to ESPN's first argument, we have previously applied the doctrine of legislative acquiescence to administrative opinions that are non-binding and advisory in nature. *See Butler Univ. v. State Bd. of Tax Comm'rs*, 408 N.E.2d 1286, 1287-91 (Ind. Ct. App. 1980) (finding legislative acquiescence to a conclusion reached by the Indiana Attorney General in an advisory opinion forty-nine years previously); *Frame v. South Bend Comm. Sch. Corp.*, 480 N.E.2d 261, 262-65 (Ind. Ct. App. 1985) (finding legislative acquiescence to a conclusion reached by the Indiana Attorney General in an advisory opinion fifty years previously). However, we find it significant that in both *Butler Univ.* and *Frame*, the advisory opinions at issue were long-standing in nature. In *Butler Univ.*, our General Assembly had acquiesced to the Attorney General's advisory opinion for forty-nine years, and in *Frame*, our General Assembly had acquiesced to the Attorney General's advisory opinion for fifty years. As we stated above, we will only apply the doctrine of legislative acquiescence when an administrative interpretation is long-standing in nature. *See Citizens Action Coal. of Ind., Inc.*, 485 N.E.2d at 616. Compared to these decision, the PACs' administrative interpretations here were not long-standing in nature—they were issued over a period of a little more than a decade. We are not convinced that this amount of time raised "a strong presumption that the [legislature] ha[d] acquiesced to the administrative interpretation." *Beer Distrib. of Ind., Inc.*, 431

N.E.2d at 840. Accordingly, we will not apply the doctrine of legislative acquiescence to bar ESPN's claim.

[41] Because we conclude that the Police Department does qualify as a "public agency" under APRA and that ESPN's claim is not barred by the doctrine of legislative acquiescence, we also conclude that the trial court erred in entering judgment in favor of the Police Department. However, we cannot, as ESPN requests, order the Police Department to produce the records that ESPN sought because we are not able to determine whether those records are accessible under APRA. ESPN's three requests are not a part of the record, and APRA exempts certain categories of public documents, such as investigatory records, from its public access requirements. *See* I.C. § 5-14-3-4 (listing records excepted from disclosure requirements). We remand to the trial court with instructions to enter judgment in favor of ESPN and to evaluate ESPN's records requests to determine which records the Police Department is required to produce under APRA.

[42] Reversed and remanded with instructions.

Vaidik, C.J., and Robb, J., concur.